# CV-09 4675

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X    Docket No._____

KARIN FILIPPI,

                            Plaintiff,

      -against-                                    **COMPLAINT**

ELMONT UNION FREE SCHOOL DISTRICT             *Jury Demanded*
BOARD OF EDUCATION, AL HARPER, and
ROBERT GERAS,

                         Defendants.

-------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    OCT 28 2009    ★

LONG ISLAND OFFICE

BIANCO, J.

LINDSAY, M.

Plaintiff Karin Filippi, by and through her attorneys, The Law Office of Steven A. Morelli,

P.C., complaining of the Defendants, alleges, upon knowledge as to herself and her own actions, and

upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

        2000e et seq., (Title VII) and the New York State Human Rights Law, N.Y. Exec. Law §§

        290 et seq., (NYHRL) to vindicate Plaintiff's rights to equal employment regardless of her

        gender and her good faith opposition to discriminatory practices. Accordingly, this Court has

        jurisdiction to hear Plaintiff's claims under 28 U.S.C. §§ 1331, 1343, & 1367.

2.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 due to the

        residence of the Plaintiff and the Defendants and because the acts about which Plaintiff

        complains occurred within the Eastern District of New York.

-1-

3.    All conditions precedent to filing suit have been fulfilled; to wit, Plaintiff provided Defendants notice of her claims by filing a verified, timely Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC), which was cross-filed with the New York State Division of Human Rights, containing the material facts that form the basis of Plaintiff's claims. Upon information and belief, the EEOC has served a copy of Plaintiff's EEOC Charge of Discrimination upon the Defendants, and more than thirty days has passed since the filing of said charge, with Defendants having neglected and refused to make adjustment or payment of the claim. On July 30, 2009, Plaintiff received a Notice of Right to Sue from the United States Department of Justice, and this action was commenced within 90 days thereof. Plaintiff's Notice of Right to Sue and Charge of Discrimination are annexed hereto, and hereby incorporated into this Complaint, as Exhibit A.

## PARTIES

4.    Plaintiff Karin Filippi, at all relevant times, was and still is a resident and domiciliary of the County of Nassau and State of New York. At all relevant times, she was a female employee of Defendant Elmont Union Free School District Board of Education within the meaning of Title VII and the NYHRL.

5.    Defendant Elmont Union Free School District Board of Education (Elmont), at all relevant times, was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York with its principal place of business located at 135 Elmont Road, Elmont, New York. Elmont is an employer of Plaintiff within the meaning of Title VII and

the NYHRL.

6.      Defendant Al Harper, at all relevant times, was and still is a resident and domiciliary of the County of Nassau and State of New York. At all relevant times, he was Plaintiff's indirect supervisor and directly participated in, aided, abetted, incited, compelled and coerced the discriminatory conduct about which Plaintiff complains.

7.      Defendant Robert Geras, at all relevant times, was and still is a resident and domiciliary of the County of Suffolk and State of New York. At all relevant times, he was Plaintiff's direct supervisor and directly participated in, aided, abetted, incited, compelled and coerced the discriminatory conduct about which Plaintiff complains.

## ALLEGATIONS COMMON TO ALL CLAIMS

8.      Filippi has been an Elmont employee since March 2006. At all relevant times, her position was Senior Account Clerk under the direction of Geras, Director of Business and Facilities.

9.      Beginning in approximately November 2007, Geras began to show favoritism to another female employee, Gena Hollwedel, Secretary, to the exclusion of Filippi. Upon information and belief, Geras and Hollwedel maintained a close relationship, whether it be professional or otherwise, and Filippi had been the target of unwelcome harassment and personal attacks as a result.

10.     Examples of such favoritism are outlined in a letter written to Elmont by Filippi's attorneys,

which is annexed to Plaintiff's Charge of Discrimination. The letter clearly describes and reports to Filippi's employer the discriminatory and harassing treatment to which she was subjected. A copy of said letter, dated October 31, 2008, is annexed to Exhibit A hereto, and its contents are hereby incorporated into this Complaint.

11.     In addition to complaining about such favoritism in the October 31 letter, Filippi described how she took offense to an inappropriate and sexually degrading email that was circulated among Elmont's employees, as more fully set forth below.

12.     On or about October 21, 2008, Filippi received third- or fourth-hand an email advertising and glorifying "Slap Your Coworker in the Face Day," which refers loosely to Ike and Tina Turner and includes an embedded video of a male worker punching his female secretary in the face.

13.     Filippi took offense to the email and forwarded it to her Union President, Joanne Manetta, to inform her that this email was being circulated and that she had taken offense to the email. Manetta then sent the email to Geras and Harper, the Elmont Superintendent, for the purpose of asking them to inform Elmont's employees that this kind of behavior was inappropriate.

14.     Geras then approached only Filippi about the email and asked whether she had known about it, to which she responded that she had. Geras asked why Filippi had not discussed the email

-4-

with him first, during which time he appeared very agitated that Filippi had forwarded the information to the Union President, as was her absolute right to do so.

15.   Geras, however, then raised his voice and yelled at Filippi, telling her that she had "no right" to contact her union and should have went directly to him if there was a problem. In his words, Filippi "works for [him], not the union."

16.   Geras then accused Filippi of circulating the email, which was completely and utterly false because she had received it as part of a chain to a number of individuals prior to her. Geras threatened Filippi that the incident would be noted in writing, meaning he was misdirecting some kind of discipline to her personnel record.

17.   By a second letter written to Elmont, Harper, and Geras dated November 7, 2008, Filippi reported to Elmont that Harper and Geras were retaliating against Filippi for her earlier complaint of discrimination. Briefly, that letter describes how Geras made disturbing comments to Filippi and required her to take on additional responsibilities and tasks that Filippi was never responsible for before, and which fell outside of her responsibilities as defined by the applicable collective bargaining agreement. Then, when Filippi simply asked Geras what the proper way to complete the assignment was because she had never done it before, Geras and Harper unjustifiably accused her of "insubordination." A copy of said letter, dated November 7, 2008, is annexed to Exhibit A hereto, and its contents are hereby incorporated into this Complaint.

18.   Once Elmont received Filippi's November 7 correspondence, Elmont retaliated against Filippi further by transferring her to a position that is materially less conducive to her career growth, is a demotion in that it requires her to report to a principal of a school rather than a director, and is an alteration of the conditions of her employment in that it changes her work schedule, as set forth below.

19.   On November 12, 2008, Elmont transferred Filippi from the Elmont's central administration building to Dutch Broadway School; she was forced to vacate the building by noon.

20.   Elmont had Filippi escorted  out of the building, as if she were a criminal, by an administrator. At the same time of Filippi's transfer, Gena Hollwedel was also transferred; however, unlike Filippi, she was given the rest of the week to complete her move. Further, Hollwedel was allowed to remain in the same building after her transfer.

21.   In fact, Hollwedell has told employees at her new work location within Elmont that she agreed to be transferred as a favor to Geras. She told these employees that Geras had informed her that Filippi had made a complaint about him, and that she was being transferred as a result; thus, Geras asked if Hollwedell would mind being transferred as well. Geras's admission to Hollwedell that Filippi had to be transferred as a result of her complaints is evidence in and of itself that Elmont was retaliating against Filippi due to her complaints of discriminatory treatment.

-6-

22.    Although Filippi held the same title and received the same pay after the transfer, the transfer
       was akin to a demotion in that it required Filippi to be supervised and monitored by the
       principal of the school despite that Filippi's job was purely administrative. This was a
       departure from her prior conditions of employment in that she previously reported to a
       director. In addition, her duties and responsibilities changed dramatically and altered the
       conditions of her employment for the worse, as set forth below.

23.    Filippi is a full-year employee, while employees in the school are in large part 10-month
       employees (meaning that they are off during the summer). Accordingly, Filippi had to spend
       the summer bouncing around the school district. From 8:00 a.m. until 1:00 p.m., Filippi was
       assigned to be the secretary to the Summer School Program at Gotham Avenue School, then
       instructed to take lunch from 1:00 p.m to 2:00 p.m., and then to report to Personnel at
       Elmont Road School where she handled menial secretarial work such as answering
       telephones, doing filing work, cleaning and packing archived files, and making photocopies.
       Given Filippi's prior position as an assistant to a director, performing such menial functions
       placed Filippi in a position of embarrassment and one which was less conducive to her
       career growth. Such assignments also placed Filippi in a position where she had very little
       chance for social or professional interaction with her colleagues.

24.    In addition, after the transfer, Filippi had her late lunches, a prior accommodation which she
       needed to take care of personal matters, taken away from her. She had previously enjoyed

this accommodation throughout her employment, but no longer could after her transfer.

25.   In addition, historically throughout her employment, Filippi selected her vacation days to suit her needs and those of her family members. Her freedom to select her days throughout the year as needed has been of critical importance to Filippi and her family, particularly in light of the special needs of family members. Prior to June 2009, she had never been required to take her vacation days during any particular period of the year. In fact, upon information and belief, none of the similarly situated staff have been required to take their vacations during any particular periods of the year.

26.   In June 2009, Filippi was told by her principal that Harper asked the principal to find out which days between the end of summer school and the beginning of the next school year she would take as her two-week vacation. When Filippi asked if she was being limited to that period within which to take her vacation, she was told that she was.

27.   There was no provision in Filippi's contract with Elmont that permitted such a limitation on her choice of vacation days. Similarly, Filippi had never received notice of such a limitation.

28.   Filippi's prior position as Geras's assistant required her to be involved in the filing of claims for benefits under the New York State Workers' Compensation Law by Elmont employees. She handled nearly all claims for benefits for Elmont. After Filippi's complaints of discrimination and retaliatory transfer, Filippi has been admonished by Harper for

-8-

performing such duties and tangentially assisting an Elmont employee in her filing of a claim for benefits under the New York State Workers' Compensation Law. Another employee, the school nurse, assisted a different employee with her filing of a claim for workers' compensation benefits. The nurse was intimidated by Geras in that Geras interrogated the nurse and asked if Filippi "had anything to do with" the employee's claim. The nurse reported to Filippi that she felt intimidated and threatened by Geras during the encounter.

29.     As set forth above, Filippi made good faith complaints of, and showed opposition to discriminatory, practices. At least four such complaints were made: (1) Filippi's complaint about the October 21, 2008 email; (2) Filippi's letter to Elmont dated October 31, 2008; (3) Filippi's letter to Elmont, Harper, and Geras dated November 7, 2008; and, (4) the filing of Filippi's Charge of Discrimination on December 11, 2008.

30.     As set forth above, Defendants were aware of this activity in that: (1) Geras received Filippi's complaint about the October 21, 2008 email and had a conversation with her about it; (2) Filippi's letter dated October 31, 2008 was addressed to the individual board members of Elmont, and certain individuals witnessed Geras and Harper reading said letter as well; (3) Filippi's letter dated November 7, 2008 was addressed to the Elmont Board, Harper, and Geras; and, (4) Filippi's Charge of Discrimination was, upon information and belief, served upon Elmont by either the EEOC or the New York State Division of Human Rights.

31.   As fully set forth above, Filippi was subjected to adverse actions as a result of said complaints. Actions such as: (1) threatening to discipline Filippi; (2) making inappropriate comments about Filippi's appearance; (3) assigning her additional duties and responsibilities that fell outside of her contractual duties and responsibilities; (4) intimidating her by unjustifiably accusing her of being insubordinate for asking a simple question about how to perform such duties; (5) transferring her to a new work location and assigning her to new job responsibilities that are less conducive to her career growth and below her experience level; (6) taking away previously granted accommodations; (6) limiting her vacation time; and, (7) admonishing her for performing her job, are all acts which could well dissuade a reasonable worker from making a complaint of discrimination.

32.   Filippi has been severely impacted by the discrimination she was subjected to by Defendants. She has been severely damaged both financially and emotionally by Defendants' acts.

## AS AND FOR A FIRST CAUSE OF ACTION

33.   Based on the foregoing, Defendant Elmont subjected Filippi to discrimination on the basis of her gender and her good faith opposition to discriminatory practices in violation of Title VII.

## AS AND FOR A SECOND CAUSE OF ACTION

34.   Based on the foregoing, Defendants Elmont, Geras, and Harper subjected Filippi to discrimination on the basis of her gender and her good faith opposition to discriminatory practices in violation of the NYHRL.

-10-

## AS AND FOR A THIRD CAUSE OF ACTION

35.     Based on the foregoing, Defendants Harper and Geras aided, abetted, incited, compelled,

and coerced the discriminatory treatment about which Plaintiff complained in violation of

the NYHRL.


**WHEREFORE,** Plaintiff demands judgment in her favor and against the Defendants for,

where applicable, all compensatory, emotional, psychological and punitive damages, and any other

damages permitted by law pursuant to the above referenced causes of action. It is respectfully

requested that the Court grant Plaintiff any other relief to which she may be entitled, including but

not limited to: (a) an award of reasonable attorneys fees, and the costs and disbursements of this

action; and, (b) such other and further relief which to the Court seems just and proper.

**Further,** Plaintiff demands a trial by jury.


Dated: Carle Place, New York
       October 27, 2007

                                        The Law Office of Steven A. Morelli, P.C.
                                        *Attorneys for Plaintiff*
                                        One Old Country Road, Suite 347
                                        Carle Place, New York 11514
                                        (516) 393-9151


                                        By:   Steven A. Morelli
                                              Eric S. Tilton


-11-

# EXHIBIT A



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5054 5468

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

July 27, 2009

Ms. Karin Filippi
c/o Steven A. Morelli, Esquire
Law Office of Steven A. Morelli
Attorney at Law
1 Old Country Rd., Ste. 347
Carle Place, NY  11514

Re: EEOC Charge Against Elmont Union Free School Dist., Board of Educ.
    No. 520200901016

Dear Ms. Filippi:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Loretta King
                              Acting Assistant Attorney General
                                    Civil Rights Division

                        by    *Karen J. Ferguson*

                              Karen L. Ferguson
                         Supervisory Civil Rights Analyst
                          Employment Litigation Section

cc: New York District Office, EEOC
    Elmont Union Free School Dist., Board of Educ.



RECEIVED

JUL 3 0 2009

LEEDS, MORELLI & BROWN PC



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
FAX (212) 336-3625
1-800-669-4000

Respondent: ELMONT UFSD BOARD OF ED.
EEOC Charge No.: 520-2009-01016
FEPA Charge No.:

January 12, 2009

Karim Filippi
19 Park Circle West
New Hyde Park, NY 11040

Dear Mrs. Filippi:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]    The Age Discrimination in Employment Act (ADEA)

[ ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]    Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.
New York State Division Of Human Rights
Federal Contract Unit
One Fordham Plaza, 4 Fl.
Bronx, NY 10458

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

HC S

Hazel C. Stewart
Supervisory Investigator
(212) 336-3776

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)

cc:  Eric S. Tilton, Esq.
STEVEN A. MORELLI
One Old Country Road, Suite 347
Carle Place, NY 11514

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2009-01016 |

## New York State Division of Human Rights and EEOC

*State or local Agency, if any*

| NAME(Indicate Mr., Ms., Mrs.)<br>Mrs. Karin Filippi | HOME TELEPHONE (Include Area Code)<br>516-741-9163 |
|---|---|

| STREET ADDRESS<br>19 Park Circle West | CITY, STATE AND ZIP CODE<br>New Hyde Park, New York 11040 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME<br>Elmont UFSD Board of Ed. | NUMBER OF EMPLOYEES, MEMBERS<br>>700 | TELEPHONE (Include Area Code)<br>516-326-5500 |
|---|---|---|

| STREET ADDRESS<br>135 Elmont Road | CITY, STATE AND ZIP CODE<br>Elmont, New York 11003 | COUNTY<br>Nassau |
|---|---|---|

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ADEA/EPA)　　LATEST (ALL) |
|---|---|
| ☐ RACE　☐ COLOR　☒ SEX　☐ RELIGION　☐ AGE<br><br>☒ RETALIATION　☐ NATIONAL ORIGIN　☐ DISABILITY　☐ OTHER (Specify) | November 2007　　　Nov. 12, 2008<br><br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please See Addendum

R E C E I V E D
DEC 11 2008
EEOC-NYDO-CRTIU

Claimant's Attorney:

The Law Office of Steven A. Morelli, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 393-9151
Fax: (516) 747-5024

State of New York　)
County of Nassau　) ss.:

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date　　*Charging Party (Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 11th December 2008<br><br>SHANNON K HYNES<br>NOTARY PUBLIC STATE OF NEW YORK<br>LIC #01HY6191939<br>COMM. EXP. 8-25-2012<br>COMMISSION IN QUEENS COUNTY |

EEOC FORM 5 (10/94)

## Addendum - Karin Filippi

1. Filippi has been an employee of the Elmont UFSD (Elmont) since March 2006. At all relevant times, her position was Senior Account Clerk under the direction of Robert Geras, Director of Business and Facilities.

2. Beginning in approximately November 2007, Geras began to show favoritism to another female employee, Gena Hollwedel, Secretary, to the exclusion of Filippi. Upon information and belief, Geras and Hollwedel maintain a close relationship, whether it be professional or otherwise, and Filippi has been the target of unwelcome harassment and personal attacks as a result.

3. For example, in November 2007, a coworker of Filippi and Hollwedel passed away. Geras required Filippi to work late nearly everyday to help shoulder the burden left in the wake of that coworker's untimely death. However, Hollwedel was not also required to work late. When Filippi complained to Geras that Hollwedel was not also required to work late, Geras stated his belief that Hollwedel was probably "just more efficient."

4. Other examples can be seen in the way Geras handled and responded to workplace disputes wherein he showed continued favoritism to Hollwedel. These examples, which occurred in May and July of 2008, are outlined in a letter written to the Elmonst UFSD Board of Education by Filippi's attorneys. The letter clearly reports to Filippi's employer the discriminatory and harassing treatment to which she was subjected. A copy of said letter, dated October 31, 2008, is annexed hereto, and its contents are hereby incorporated into this Charge of Discrimination.

5. By a second letter written to the Board, Superintendent Al Harper, and Robert Geras himself, dated November 7, 2008, Filippi reported to her employer that Harper and Geras were retaliating against Filippi for her first complaint of discrimination. Briefly, that letter describes how Geras made disturbing comments to Filippi and required her to take on additional responsibilities and tasks that Filippi was never responsible for before and which fell outside of her responsibilities as defined by the applicable collective bargaining agreement. A copy of said letter, dated November 7, 2008, is annexed hereto, and its contents are hereby specifically incorporated into this Charge of Discrimination.

6. Once Elmont received Filippi's November 7 correspondence, Elmont retaliated against Filippi further by transferring her to a position that is materially less conducive to her career growth, is a demotion in that it requires her to report to a principal of a school rather than a director, and is an alteration of the conditions of her employment in that it changes her work schedule by changing her summer hours, as set forth below.

7. On November 12, 2008, Elmont transferred Filippi from the Elmont's central administration building to Dutch Broadway School; she was forced to vacate the building by noon. Elmont had Filippi escorted out of the building, as if she were a criminal, by an administrator. At the same time of Filippi's transfer, Gena Hollwedel was also transferred; however, unlike Filippi, she was given the rest of the week to complete her move. Further, Hollwedel was allowed to remain in the same building after her transfer.

Although Filippi holds the same title and will presumably receive the same pay, the transfer is akin to a demotion in that it requires Filippi to be supervised and monitored by the principal of the school despite that Filippi's job is purely administrative. This is a departure from her prior conditions of employment in that she previously reported to a Director. In addition, Filippi is a full-year employee, while employees in the school are in large part ten-month employees (meaning that they are off during the summer). Accordingly, Filippi will likely be transferred around the district doing menial filing work and will be working by herself with very little chance for social or professional interaction with her colleagues during the summer months. Filippi has also had her late lunches, which she needed to take care of personal matters, made temporary. She had previously enjoyed this accommodation throughout her employment.

8.   The foregoing acts would dissuade a reasonable worker from making a complaint of discrimination.

9.   Filippi has been severely impacted by the discrimination and retaliation she was subjected to by Elmont. She has been severely damaged both financially and emotionally by Elmont's acts.

10.  Based on the foregoing, Filippi was subjected to discrimination on the basis of her gender or the gender of another and her good faith complaints of discrimination in violation of the Title VII of the Civil Rights Act of 1964, and all applicable state and local provisions that can be inferred from the facts set forth herein including the New York State Human Rights Law.

The Law Office Of

# STEVEN A. MORELLI

One Old Country Road, Suite 347, Carle Place, New York 11514

Tel: 516-393-9151                                                                                  Fax: 516-747-5024

October 31, 2008

*Via Overnight Delivery*

Members of the Board of Education
Elmont UFSD
(see attached)

          Re:     *Karin Filippi / Robert Geras*

Dear Member:

          Our office has been retained to represent the rights and interests of Elmont UFSD
employee Karin Filippi, Senior Account Clerk. She has asked us to contact you directly with
respect to a number of concerns she has regarding her supervisor, Robert Geras, Director of
Business and Facilities.

          As you know, Filippi has been an employee of the District since March 2006. She has
served admirably and without incident until approximately November 2007 when her supervisor,
Geras, began to target her with unwelcome and, in many cases, extremely disturbing
unprofessional attacks which have now culminated to the point where this Board should be
concerned for her safety.

          The current dispute between these two District employees can be traced back to the fall of
2007. Upon the untimely death of a coworker in November, Filippi showed the District that she
was committed to its constituency by taking on increased responsibility to help shoulder the
burden left on her department in the wake of that unfortunate incident. However, Filippi was
taken advantage of by Geras and a co-worker due to her willingness to perform extra duties.
Filippi would work overtime nearly every day in order to complete the District's business, while
her coworker, Gena Hollwedel, refused to do so and would walk out of the office each day at her
normal departure time. Filippi asked Geras why Hollwedell was not required to stay late each day.
Geras's only response was quite fatuous: "she's probably just more efficient." From this point
forward, Geras continually showed favoritism and preference for Hollwedell to the exclusion of
Filippi, and the situation has now escalated to the point where Geras has been falsely accusing
Filippi of certain performance deficiencies and has gone so far as to involve Superintendent Al
Harper and Elmont UFSD Attorney Collum Nugent, as set forth below.

          In May 2008, Filippi and her co-workers were compiling bid information for Geras's and

the Board's use. One of the bids happened to be incomplete and otherwise contained wrong information, to no fault of any District employee. This resulted in an inevitable delay to the compilation of bid information. Filippi unfortunately had taken ill on one particular day during this time period, which was while she was recovering from surgery on her spine, and asked Geras for permission to leave early. Instead of being understanding, Geras screamed and yelled at Filippi for leaving early and amazingly blamed her for the fact that the bid compilation was not yet complete, despite that it was a department-wide problem. The very next day, Geras directed Filippi to meet with him and Hollwedell (for an unexplained reason considering Hollwedell is not a supervisor but a secretary). Filippi, rightly so, refused to meet with Geras without union representation. Geras then began to scream and yell at Filippi in public and among her coworkers, telling her to "go upstairs" (like a parent to a child).

Dr. Lynn Stucchio, Director of Curriculum, witnessed the incident. She went so far as to report the incident to union representatives Sharon Woitko and Ann Marie Savalli, presumably because it was completely inappropriate and in violation of the District's Code of Ethics. Specifically, Board Policy 8000 (a)(II) states that "Officers and employees are expected to conduct themselves in a businesslike manner. . . . [S]wearing, sexual harassment and similar unprofessional activities are strictly prohibited." Likewise, Board Policy 8000 (b)(16) states that "[a]ny officer or employee shall treat the other members of the Board and/or employees of the district with courtesy and respect. . . . Denigration and personal attack . . . of another Board member or employee of the district shall be viewed by the Board as unethical behavior and misconduct which shall render him/her unfit to hold office of Board member or employee of the district."

Later that same day, Geras falsely accused Filippi of leaving early despite that she, as witnessed by others, was present and at her workstation until her normally scheduled departure time. On the very next day, Geras again called Filippi into his office and yelled at her because, as he said, "Harper knows all about this." Presumably Geras was referring to the way he treated Filippi the day before, and his tone and demeanor suggested that he was angry and upset with Filippi for reporting his behavior. However, as set forth above, Filippi did not complain about the incident, while a District Director did. Again, Geras inexplicably forced Filippi to have a meeting with Hollwedel to discuss their disputes, which there really were none other than that Geras showed continued favoritism to Hollwedel to the exclusion of Filippi. This continued showing of favoritism toward Hollwedel and bias toward Filippi shows, at the very least, the appearance of an improper relationship between Geras and Hollwedel, professional or otherwise. For example, Hollwedel would make ridiculously false allegations against Filippi to Geras, which required Filippi to produce proof to Geras that showed the allegations were untrue in order to defend herself. Then, rather than disciplining Hollwedel for making false allegations, Geras made repeated inappropriate comments to Filippi about the death of her co-worker that had occurred months before for the sole purpose of bothering and annoying her—essentially for the purpose of getting Filippi to leave him alone.

In July, Geras displayed another incidence of inappropriate and unprofessional favoritism

toward Hollwedel. Filippi had noticed that at midday, many employees were not present and had left early, as their offices were dark and they were physically not there, including Geras and Hollwedel. Filippi asked another coworker where everyone was. Hollwedel, who had then arrived back at work, and who presumably had spoken to her coworkers, then lunged at Filippi in a physically aggressive manner yelling at her for allegedly "interrogating" her coworkers about her whereabouts. Of course, this irrational outburst was wholly unjustified in light of the fact that Filippi simply asked a coworker where everyone (not just Hollwedel) was on that particular day. Amazingly, Geras sided with Hollwedel after this incident escalated to the point of his involvement. Geras told Filippi that *she* had "set off" *Hollwedel* by "looking at the clock." He also falsely claimed that Ann Marie Savalli agreed with that statement, which is contrary to what Savalli herself wrote in an incident report on the day's events. Quite frankly, in our opinion, it is absurd that Geras is permitted to show such favoritism in a public and purportedly professional environment.

The entire dispute between the two parties seems to have ultimately culminated recently, beginning October 21, 2008, and continuing to this day, due to an inappropriate and sexually degrading email that was circulated among the District's employees. Filippi received fourth- or fourth-hand an email advertising and glorifying "Slap Your Coworker in the Face Day," which refers loosely to Ike and Tina Turner and includes an embedded video of a male worker punching his female secretary in the face. Filippi took minor offense to the email and forwarded it to her Union President, Joanne Manetta, to inform her that this email was being circulated. Apparently Manetta sent the email to Harper and Geras for the purpose of asking that they inform the employees that this kind of behavior was inappropriate. Geras actually approached only Filippi about the email and asked whether she had known about it, to which she responded that she had. He asked why Filippi had not discussed the email with him first, during which time he appeared very agitated that Filippi had forwarded the information to the Union President, as is her absolute right to do so. Geras, however, then raised his voice and yelled at Filippi, telling her that she had "no right" to contact her union and should have went directly to him if there was a problem. In his words, Filippi "works for [him]", not the union." Geras then accused Filippi of circulating the email which was completely and utterly false since she had received it as part of a chain to a number of individuals prior to her. Geras then told Filippi that the incident would be noted in writing, meaning he was misdirecting some kind of minor discipline to her personnel record.

We also understand that this is not the first time Geras has retaliated against District employees or ignored complaints of discriminatory treatment. We are told that when a female clerical employee made a sexual harassment complaint against a male custodial employee under Geras's control directly to Geras, that Geras inexplicably told the female employee to "just ignore him." Later, we would submit due to Geras's failure to take the complaint seriously, the male employee stalked the female worker at her home and approached her in front of her children. While we understand that male employee was eventually dismissed from service, we are appalled to learn that Geras took it upon himself to find that man another job. At one point during the process, Geras even told the female employee to "back off" the complaint since the custodian was a "family man" who "needs to feed his family." We are told that on another occasion Geras was

disciplined for shoving another employee. It is absolutely outrageous that Geras remains a Director within the District.

Apparently, Geras has now engaged on a course of conduct designed to punish Filippi for her complaints and, to do so, has recruited the help of a number of other District employees. For example, we understand that a District employee contacted Manetta's friend for the purpose of having said friend tell Manetta to "stay away from this one." This kind of backhanded threat can only be seen as a retaliatory act based upon Filippi's complaints of unfair treatment. We also understand that either a District employee contacted Filippi's former employers at Herricks School District for the purpose of gathering information about her which can be used negatively against her within Elmont.

As of today, it appears the dispute is continuing to escalate, and our client is extremely concerned for her professional career as well as her physical and mental well-being. We are hopeful that by writing directly to you, you can investigate our client's claims against Geras without the need for litigation. We are told that you are already partly aware of this situation as it was purportedly discussed in a special meeting of the Board on October 25. We hope that you continue those discussions and take proper disciplinary action against those responsible for harassing our client or seeking to besmirch her good name and tarnish her career. We would remind you that your own policy suggests that the above violations of the Code of Ethics should lead to forfeiture of pay, suspension, or removal. We would ask that you honor that policy and take appropriate remedial action against Geras. We would further ask to be advised of any steps you are taking to investigate and remedy this situation and that we be present during all such public discussions or private conversations with our client.

We truly hope there is no need for any further communications such as this, and that these issues between District employees can be resolved by you and within the District, rather than in some other forum. Our experience in this field has taught us that internal and amicable resolutions are better for all involved in order to avoid the expense and public nature of litigation. However, be assured that our client is considering all of the legal options available to her should the Board not resolve to settle this matter and take steps designed to protect her against further unwelcome harassment and intimidation.

Very truly yours,

Steven A. Morelli
Eric S. Tilton

cc:   Karin Filippi
      Joanne Manetta

Frank Ragona, President
19 Clinton Street
Elmont, NY 11003
*Via Overnight Delivery*

Michael A. Jaime
69 Queens Avenue
Elmont, NY 11003
*Via Overnight Delivery*

Lorraine Ferrigno, Vice President
221 Litchfield Avenue
Elmont NY 11003

Pamela Byer
115-67 238th Street
Elmont, NY 11003

Anthony S. Maffea, Sr.
127 Raff Avenue
Elmont, NY 11003

Carol Parker-Duncanson
2296 Dutch Broadway
Elmont, NY 11003

Deniece Walker
97 Claridge Avenue
Elmont, NY 11003

MODE = MEMORY TRANSMISSION                    START=NOV-07 10:29    END=NOV-07 10:33

        FILE No.=542

| STN No. | COMM. | KEY NAME | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---------|-------|----------|------------------------------------------|-------|----------|
| 001 | OK | ã | 3265574 | 002/002 | 00:00:21 |
| 002 | OK | ã | 3265537 | 002/002 | 00:00:21 |

                                                    -LEEDS MORELLI          -

***** DP-6030 ********************** –        – ***** –              – *********

### LAW OFFICE OF STEVEN A. MORELLI, P.C.
ONE OLD COUNTRY ROAD, SUITE 347, CARLE PLACE, NY 11514
TELEPHONE: (516) 393-9151
FAX: (516) 747-5024

| TO | : | Board of Education, Elmont UFSD |
|----|---|--------------------------------|
| FAX NO. | : | (516) 326-5574 |
| TO | : | Al Harper, Superintendent |
| FAX NO. | : | (516) 326-5574 |
| TO | : | Robert Geras |
| FAX NO. | : | (516) 326-5537 |
| FROM | : | Eric S. Tikon |
| DATE | : | November 7, 2008 |
| RE | : | Karen Filippi |
| No. of PAGES: | | 2 (including cover sheet) |

### COMMENTS

### CONFIDENTIALITY NOTICE

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

The Law Office Of
# STEVEN A. MORELLI

One Old Country Road, Suite 347, Carle Place, New York 11514

Tel: 516-393-9151                                                      Fax: 516-747-5024

November 7, 2008

*Via Facsimile*

Superintendent Al Harper (516) 326-5574
Robert Geras (516) 326-5537
Board of Education (516) 326-5574
Elmont UFSD

Re:    *Karin Filippi*

Dear Sirs:

As you already know, we represent Karin Filippi. We understand that you have taken it upon yourselves to retaliate against Ms. Filippi after her complaint of illegal workplace discrimination was sent to the Board on or about October 31, 2008, which other individuals witnessed you reading. We understand that Mr. Geras made disturbing comments about Ms. Filippi's physical appearance in that he asked her "what's wrong" with her neck, referring to a scar she carries as a result of a past surgery. Equally as disturbing is the more subtle tactic of assigning her tasks and work which are outside of her job responsibilities, in violation of the collective bargaining agreement, in an underhanded attempt to prove her incompetence. Then, when Ms. Filippi simply asked Mr. Geras what the proper way to complete the assignment was because she had never done it before, Mr. Geras and Mr. Harper unjustifiably accused her of "insubordination." Frankly, it is an absurd accusation to make and was clearly made in attempt to find reason to terminate her.

Please be advised that we are carefully monitoring Ms. Filippi's situation and are watching it with keen interest. Should any further acts of retaliation occur, it appears that we will no longer be able to amicably discuss her situation with you. We are still awaiting a response to our prior correspondence.

Very truly yours,

Steven A. Morelli
Eric S. Tilton

cc:    Karin Filippi
       Joanne Manetta