# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

———————————

№ 09-CV-4675 (JFB) (ARL)

———————————

KARIN FILIPPI,

Plaintiff,

VERSUS

ELMONT UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, AL HARPER, AND ROBERT GERAS,

Defendants.

———————————

**MEMORANDUM AND ORDER**
July 2, 2010

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Karen Filippi brought this employment discrimination and retaliation action against her employer, Elmont Union Free School District Board of Education (hereinafter "the Board"), Superintendent of Schools Al Harper (hereinafter "Harper"), and former administrator Robert Geras (hereinafter "Geras") (collectively "defendants"), claiming that she was subject to harassment, discrimination, and retaliation by defendants while employed by the Elmont Union Free School District Board of Education. Defendants now move to disqualify plaintiff's counsel—the Law Offices of Steven A. Morelli (hereinafter "the Morelli Firm" or the "Firm") and of counsel Eric Tilton (hereinafter "Tilton") of Eric S. Tilton, P.L.L.C.—because an associate at the

Morelli Firm, Lorraine Ferrigno (hereinafter "Ferrigno"), is also the Vice President of the defendant Board of Education.

The issue in this case is whether a law firm can represent a plaintiff in a Title VII suit against a defendant Board of Education even though an associate at the law firm representing the plaintiff is currently the Vice President of the defendant Board and was on the Board at the time the Board received letters regarding the alleged discrimination at issue in this lawsuit. As set forth below, the Court concludes that, because an attorney at the law firm representing plaintiff has an ongoing fiduciary duty to the named defendant Board in this action as a member of the Board, there is a clear and unwaivable conflict under Rule 1.7 of the New York State Rules of Professional Conduct that is imputed

to the entire firm under the circumstances of this case and requires disqualification. Disqualification also is required, in the alternative, under Rule 1.11 because the associate was, at the time of the events at issue, and is currently, a public officer in her capacity as a Board member, and her firm would be representing a plaintiff in a matter in which she personally and substantially participated as a public officer. Although counsel for plaintiff contends that the associate has been (and will continue to be) walled off from any knowledge of or involvement in this litigation, the Court concludes that these screening procedures in this six-lawyer firm are insufficient to overcome disqualification under the circumstances presented here and that the conflict is imputed to the entire Morelli Firm. The Court also concludes in the alternative that, even if the conflict were waivable, the Board did not waive the conflict. Thus, the motion to disqualify the Morelli Firm is granted. Moreover, the motion to disqualify Tilton, who is of counsel to the Morelli Firm, is also granted. Specifically, it is uncontroverted that (1) Tilton previously worked at the Morelli Firm as an associate; (2) Tilton worked on this particular matter as an associate; (3) Tilton continues, in his of counsel capacity, to share office space and a secretary with the Morelli Firm; and (4) 95% of Tilton's work still comes from the Morelli Firm. Under such circumstances, there is a rebuttable imputation of the conflict to Tilton and neither the Morelli Firm nor Tilton has supplied any facts or information regarding the relationship between Tilton and the Firm that would rebut this imputation of the conflict. Thus, Tilton is also disqualified.

## I. BACKGROUND

### A. The Complaint

According to the complaint, plaintiff was employed as a Senior Account Clerk under the direction of Geras, Director of Business and Facilities for Elmont since March 2006. (Compl. ¶ 8.) Plaintiff alleges that, beginning in November 2007, Geras began to show favoritism to another female employee, Gena Hollwedel (hereinafter "Hollwedel"), a secretary; plaintiff contends that she became the target of "unwelcome harassment and personal attacks as a result" of this favoritism. (*Id.* ¶ 9.) According to a letter from plaintiff's counsel to the Board dated October 31, 2008, which is attached as Exhibit A to plaintiff's complaint, plaintiff was subject to several acts of discrimination. Plaintiff contends that when a coworker passed away in November 2007, she took on increased responsibility; according to plaintiff, she was thereafter "taken advantage of by Geras and a co-worker due to her willingness to perform extra duties." (*Id.* Ex. A at 7.) According to plaintiff, Hollwedel, on the other hand, left the office each day at her normal departure time. (*Id.*) Plaintiff alleges that when she inquired as to why Hollwedel was not required to stay late, Geras responded, "she's probably just more efficient." (*Id.*)

According to plaintiff, in May 2008, when she and her coworkers were compiling bid information for Geras and the Board, one of the bids was incomplete and contained incorrect information. (*Id.* at 7-8.) While they were working on the bids, Filippi became ill because she was recovering from spine surgery and she asked for permission to leave early. (*Id.* at 8.) According to Filippi, Geras "screamed and yelled at Filippi for leaving early" in front of her coworkers and "blamed

her for the fact that the bid compilation was not yet complete, despite that it was a department-wide problem." (*Id.*) The next day, plaintiff contends that Geras directed her to meet with him and Hollwedel, which plaintiff refused to do without union representation. (*Id.*) Dr. Lynn Stucchio, Director of Curriculum, witnessed this alleged incident and reported it to union representatives Sharon Woitko and Ann Marie Savalli. (*Id.*)

Plaintiff alleges that Geras then accused her of leaving early that day, even though she had been present at her desk until her normally scheduled departure time. (*Id.*) Plaintiff claims that Geras then forced her to have another meeting with him and Hollwedel to discuss their disputes. (*Id.*) The letter from plaintiff's counsel to the Board also alleges that Hollwedel would regularly make false allegations about Filippi, which required Filippi to "produce proof to Geras that showed the allegations were untrue in order to defend herself." (*Id.*) Filippi also alleges that Geras repeatedly made inappropriate comments to her about her deceased coworker in order to bother and annoy her. (*Id.*)

In July 2008, plaintiff alleges that, one particular day, she noticed that many employees had left early, and she inquired with another coworker where everyone was. (*Id.* at 8-9.) Plaintiff alleges that Hollwedel returned at that point and "lunged at Filippi in a physically aggressive manner yelling at her for allegedly 'interrogating' her coworkers about her whereabouts." (*Id.* at 9.) Filippi claims that Geras sided with Hollwedel and told Filippi that she had "set off" Hollwedel by "looking at the clock." (*Id.*)

On October 21, 2008, plaintiff alleges that an inappropriate and sexually degrading email

was circulated among the District's employees, which advertised "Slap Your Coworker in the Face Day." (Compl. ¶ 12.) Filippi took offense to the email and forwarded it to the president of her union, Joanne Manetta (hereinafter "Manetta"), to inform her that the email was being circulated. Manetta forwarded the email to Harper and Geras to request that they inform the employees that this kind of behavior was inappropriate. (*Id.* ¶ 13.) Plaintiff alleges that Geras was furious with her for contacting the union president and that Geras accused her of circulating the email. (*Id.* ¶¶ 14, 16.) According to plaintiff, Geras told Filippi that the incident would be noted in writing. (*Id.* ¶ 16.) On October 31, 2008, plaintiff's counsel sent a letter to the Board, collectively, and its members, individually, detailing the above instances of alleged discrimination.

Plaintiff further asserts that Geras and other District employees retaliated against her for complaining about her treatment at work. (*Id.* Ex. A at 10.) For example, plaintiff alleges that a District employee contacted Manetta's friend to tell Manetta to "stay away from this one." (*Id.*) Plaintiff also alleges that Geras made disturbing comments to Filippi and required her to take on additional responsibilities and tasks that were outside of her responsibilities as defined by the collective bargaining agreement. (Compl. ¶ 17.) Filippi also contends that when she asked Geras the proper way to complete an assignment that she had never done before, Geras and Harper accused her of insubordination. (*Id.* ¶ 17.) Filippi complained about this retaliation in a letter from her counsel to the Board, dated November 7, 2008. (*Id.* Ex. A.)

Plaintiff further alleges that as a result of the November 7, 2008 correspondence, on

November 12, 2008, she was transferred to a position that is "materially less conducive to her career growth, is a demotion in that it requires her to report to a principal of a school rather than a director, and is an alteration of the conditions of her employment in that it changes her work schedule." (Compl. ¶¶ 18, 19.) Hollwedel was also transferred, but plaintiff alleges that, whereas plaintiff was required to complete her move in one day and was relocated to a different building, Hollwedel was given the rest of the week to complete her move and was allowed to remain in the same building after the transfer. (*Id.* ¶ 20.) Plaintiff alleges that Hollwedel told employees that she agreed to be transferred as a favor to Geras. (*Id.* ¶ 21.)

According to the complaint, plaintiff's new position maintained the same title and same pay but was akin to a demotion because it required Filippi to be supervised and monitored by the principal of the school, "despite [the fact] that Filippi's job was purely administrative." (*Id.* ¶ 22.) The complaint further alleges that Filippi's conditions of employment changed drastically after her transfer. Filippi claims that she is currently a full-year employee while employees in the school are ten-month employees. (*Id.* ¶ 23.) Filippi further alleges that she was assigned to be secretary to the Summer School Program at Gotham Avenue School from 8:00 a.m. until 1:00 p.m. during the summer and then was assigned to menial secretarial work at the Elmont Road School in the afternoons. (*Id.*) Plaintiff claims that this "menial" position embarrassed her and was less conducive to her career growth. She also alleges that, after her transfer, she was not allowed to take late lunches anymore. (*Id.* ¶ 24.) Plaintiff further contends that she was no longer allowed to select her vacation days as she wished after her transfer. (*Id.* ¶¶ 25-27.)

Plaintiff's prior position as Geras's assistant required her to be involved in the filing of claims for benefits under the New York State Workers' Compensation Law by Elmont employees. (*Id.* ¶ 28.) After her complaints of discrimination, plaintiff alleges that she had been admonished by Harper for performing such duties and for tangentially assisting an Elmont employee with filing of a claim for benefits under the Workers' Compensation Law. (*Id.*) Plaintiff also asserts that another employee, a nurse, had assisted a different employee with filing a claim for workers' compensation benefits; plaintiff claims that the nurse told Filippi that Geras had "interrogated" her [the nurse] regarding whether Filippi "had anything to do with" the claim, and that the nurse felt "intimidated and threatened by Geras" during the encounter. (*Id.*)

Plaintiff filed a Charge of Discrimination regarding the same material allegations contained in this complaint with the Equal Employment Opportunity Commission (EEOC), which was cross-filed with the New York State Division of Human Rights. (Compl. ¶ 3.) On July 30, 2009, plaintiff received a Notice of Right to Sue. (*Id.*; *see also id.* Ex. A.) Plaintiff thereafter filed the instant complaint, bringing claims for discrimination based on her gender under Title VII and the New York Human Rights Law.

### B. Facts Relevant to the Motion to Disqualify

Lorraine Ferrigno is the Vice President of the Elmont Union Free School District Board of Education and has occupied that position since July 2008. (Defs.' Mot. at 2; Pl.'s Opp. at 2.) As a member of the Board, Ferrigno was generally involved in the Board's

deliberations regarding employment issues and participated directly in the Board's decision-making processes. (Defs.' Mot. at 3.)

In October 2008, plaintiff retained the Morelli Firm to represent her with respect to her employment issues with defendants. (Pl.'s Opp. at 2.) On October 31, 2008, as discussed *supra*, the Morelli Firm wrote a letter to the Board, alerting its members to Filippi's grievances with Geras. (*Id.*) The Morelli Firm wrote a second letter to the Board on November 7, 2008, specifying Filippi's claims regarding alleged retaliatory acts taken against her as a result of her complaints about Geras. (*Id.*)

In May 2008, Ferrigno consulted with the Morelli Firm with respect to handling a legal matter on her behalf. (Morelli Decl. ¶ 5.) Thereafter, Ferrigno, an attorney, began doing some work for the Morelli Firm on a part-time basis. (*Id.*) A few months after Ferrigno started working part time, Steven A. Morelli (hereinafter "Morelli"), the firm's principal, became aware that she was a Board member of the Elmont Union Free School District Board of Education. Thereafter, Morelli alleges that the Filippi case was never discussed in Ferrigno's presence. (*Id.* ¶ 6.) In September 2009, the Morelli Firm contemplated making an offer of full-time employment to Ferrigno, but she was asked to consult with the Board before she was offered the position to ensure that there would be no conflicts. (*Id.* ¶ 7.) The Board members gave Ferrigno their approval for Ferrigno to accept the position with the Morelli Firm, provided that she did not participate in Filippi's case. (*Id.* ¶ 8.) The Morelli Firm also consulted with plaintiff prior to offering Ferrigno employment. (*Id.* ¶ 9.) Plaintiff was "fully aware of the situation, and told Morelli that

[she] did not have a problem with the hiring of Ferrigno," with the understanding that Ferrigno had no access to Filippi's file and would not participate in Filippi's case in any way. (Filippi Decl. ¶ 4.)

On September 8, 2009, one month after the EEOC issued a Notice of Right to Sue to plaintiff, Ferrigno was hired as an associate with the Morelli Firm. (Morelli Decl. ¶¶ 7-8; Defs.' Mot. at 3.) The Morelli Firm is a small firm that specializes in civil rights and employment discrimination. (Defs.' Mot. Ex. B.) Eric S. Tilton, also counsel in this case, is principal of his own firm, Law Offices of Eric S. Tilton, P.L.L.C., but performs work as "of counsel" to the Morelli Firm. (*Id.* Ex. C.) According to an email that Tilton sent to Steven Stern, a partner at Sokoloff Stern LLP, counsel to defendants, approximately 95% of the work Tilton performs is for the Morelli Firm. (Defs.' Mot. Ex. C.)

Ferrigno retains her positions as Vice President of the Board and as an associate for the Morelli Firm at present. (*Id.* at 2.) Plaintiff has stated that she does not believe that her attorneys have a conflict of interest in this case, and to the extent that there is such a conflict, she waives the conflict in order to retain the counsel of her choosing. (Filippi Decl. ¶ 7.) The Morelli Firm affirms that Ferrigno has had no involvement with the case on behalf of the Firm and that all personnel in the Firm have been notified that Ferrigno is to have no participation in or knowledge of Filippi's case. (Morelli Decl. ¶ 12.) Ferrigno does not have physical access to Filippi's files and, according to Morelli, will not be apportioned any part of Filippi's fees. (*Id.*) Morelli also declares that, upon information and belief that "once Ms. Ferrigno accepted employment with this firm [in 2009], she recused herself from all

discussions regarding Ms. Filippi's case and has not received any documents or correspondence regarding this matter." (*Id.* ¶ 13.)

## C. Procedural History

Plaintiff filed the complaint in this action on October 28, 2009. On January 5, 2010, the Board and Harper filed their answer. On January 13, 2010, defendants' counsel filed a letter notifying the Court of the potential conflict of interest in this case. On January 25, 2010, defendant Geras filed his answer to the complaint. On January 26, 2010, the Court held a pre-motion conference and set a briefing schedule for the instant motion to disqualify. On February 25, 2010, defendants filed the instant motion to disqualify plaintiff's counsel. On April 9, 2010, plaintiff filed opposition to the motion. On May 7, 2010, defendants filed their reply. Oral argument was heard on June 28, 2010. This matter is fully submitted.

## II. DISCUSSION

### A. Standard for Disqualification of Counsel

Disqualification is viewed "with disfavor in this circuit," *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991), because it impinges on a "client's right freely to choose his counsel." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons," and "even when made in the best of faith, such motions inevitably cause delay." *Evans*, 715 F.2d at 791 (citation and internal quotations omitted); *accord Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and is only appropriate where allowing the representation to continue would pose a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (internal quotation marks omitted). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although the Second Circuit has emphasized that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132.[1] However, "any doubt is to

---

[1] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Rules of Professional Conduct. Local Civ. R. 1.5(b)(5). Moreover, although the Canons of the Code of Professional Responsibility in the State of New York have been replaced with the newly implemented New York State Rules of Professional Conduct, the Court notes that the case authority interpreting the old canons continues to be probative on issues that are analyzed under the new rules, especially where (as with the applicable rules in the instant case) the new rule generally incorporates the substance of the old canons. *See, e.g.*, *Pierce & Weiss, LLP v. Subrogation Partners LLC,* No. 08-4676, 2010 WL 546060, at *6 (E.D.N.Y. Feb. 16, 2010) ("Even though the Canons have been replaced by the New York

6

be resolved in favor of disqualification." *See Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975); *see also Nichols v. Vill. Voice,* 417 N.Y.S.2d 415, 419 (Sup. Ct. 1979) (citation omitted).

### B. Grounds for Disqualification

### 1. Existence of a Conflict of Interest Under Rule 1.7

#### (a) Nature of Conflict

As discussed above, Ferrigno is currently the Vice President of the Elmont Union Free School District Board of Education and is employed as an associate for the Morelli Firm. Defendants argue that this is a substantial and inescapable conflict of interest under Rule 1.7 of the New York State Rules of Professional Conduct (hereinafter the "Rules"), which prohibits lawyers from representing parties with conflicting interests. Plaintiff asserts that no such conflict exists. Specifically, plaintiff argues that Ferrigno is not an attorney for the Board, and therefore there is no attorney-client conflict, and that, assuming *arguendo* that a conflict does exist, the Morelli Firm has sufficiently screened off Ferrigno from the lawyers at the Firm who are handling plaintiff's case. The Court concludes that a substantial conflict of interest does exist, and the Morelli Firm's screening procedures are insufficient to overcome the conflict.

Rule 1.7 provides that "a lawyer shall not

Rules of Professional Conduct, the new rules still incorporate much of the substance of the old rules. Therefore, much of the precedent interpreting the old rules still remains applicable." (citation omitted)).

represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." Rule 1.7(a)(1). As attorney for plaintiff and Vice President of the Board, Ferrigno sits on both sides of this case. The relevant question is thus whether Ferrigno's relationships with the Board and with the Morelli Firm are of such a nature that they require disqualification of the Morelli Firm from its representation of plaintiff.

Ferrigno is an associate of the Morelli Firm, which represents plaintiff in this action against the Board. As a member of the Elmont Union Free School District Board of Education, defendant in this action, Ferrigno is a fiduciary with a duty of loyalty to the Board; she is also the Board's Vice President. As an officer of the Board, Ferrigno also supervises defendant Al Harper, Superintendent of the Elmont Union Free School District.

Plaintiff argues that Ferrigno's position on the Board is not an attorney-client relationship, and, therefore, there is no conflict of interest under Rule 1.7. The Second Circuit has instructed that "the issue [in a disqualification case] is not whether [counsel's] relationship to [the moving party] is in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship 'for purposes of triggering inquiry in to the potential conflict involved in [counsel's] role as plaintiff's counsel in this action.'" *Glueck*, 653 F.2d at 749-50 (footnote and citations omitted); *id.* at 750 n.8 ("We reject, as did Judge Conner, the appellant's contention that disqualification should not occur because Logan's division, R&K Originals, is a member of the Association, rather than Logan itself. The risks identified by Judge Conner are sufficient

to warrant disqualification even though only Logan's division is a member of the Association. Nor do we accept the contention that it will be unduly burdensome for law firms that represent trade associations to inform themselves of the corporate identity of those members of an association that are constituent parts of a non-member corporation."); *Marshall v. State of N.Y. Div. of State Police*, 952 F. Supp. 103, 108 (N.D.N.Y. 1997) (concluding that when conflicted attorney was "employed by the Governor's Office of Employee Relations," although she was not employed as counsel to the Office, an attorney-client like relationship existed because "the Court [could not] conclude that the [Governor's Office of Employee Relations] would have revealed their 'confidences,' at a time when the State clearly knew that litigation was possible, if not imminent, without some expectation that [the conflicted attorney] owed a duty of confidentiality"); *see also Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318-20 (7th Cir. 1978) ("There are several fairly common situations where there is no express attorney-client relationship, there exists nonetheless a fiduciary obligation or an implied professional relation. . . . A fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged."). To be sure, "the requirements of confidentiality and the necessary limitations on subsequent representation [may] apply even though the adverse interests are not those of a client in the traditional sense." *Marshall*, 952 F. Supp. at 108 (collecting cases). Courts in this Circuit have required disqualification in several contexts where an attorney or firm did not have a traditional attorney-client relationship with both parties. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977) (ordering

disqualification even though firm never represented the client due to the firm's involvement with a second firm that was disqualified for representing interests adverse to the client); *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570-72 (2d Cir. 1973) (affirming disqualification of plaintiffs' attorney who had previously represented part owner of corporate defendant in case involving identical issue); *Hartford Accident & Indem. Co. v. RJR Nabisco, Inc.*, 721 F. Supp. 534, 539-40 (S.D.N.Y. 1989) (finding, on a motion to disqualify, that plaintiff's law firm, which represented defendant corporation's subsidiary in prior representation, would be deemed to have previously represented the defendant parent corporation); *see also Glueck*, 653 F.2d at 749 n.4 ("We have previously held the standards of Canon 5 [regarding representation of a client in one suit against another client] to be applicable even though the interests adverse to those of a law firm's client are not those of another client in the traditional sense.").

In *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981), the Second Circuit affirmed the disqualification of plaintiff's counsel when plaintiff's counsel represented the Apparel Manufacturers Association, Inc. A member of the Apparel Manufacturers Association, R&K Originals, was a division of the defendant, Jonathan Logan, Inc. Thus, R&K Originals was both a member of plaintiff and a division of defendant, but not a party to the action. The Second Circuit recognized that "the strict standards of [conflicts and disqualification] are [not] inevitably invoked whenever a law firm brings suit against a member of an association that the firm represents," *id.* at 749. Nonetheless, in that case, even though R&K Originals was not a client of plaintiff's firm but was merely a *member* of one of the

plaintiff's firm's clients, the court found that the district court was well within its discretion to grant the motion for disqualification because the subject of plaintiff's lawsuit was substantially related to plaintiff's counsel's representation of the Apparel Manufacturers Association. *Id.* at 747-49. Similarly, in *Marshall v. State of New York Division of State Police*, 952 F. Supp. 103 (N.D.N.Y. 1997), a court disqualified a plaintiff's counsel because one of the attorneys working for plaintiff's counsel was employed by the defendant at one point. *Id.* at 107, 112-14. The court found that the attorney's relationship with the defendant had sufficient aspects of the attorney-client relationship, including evaluation of the merits of legal claims against the defendant and an expectation of confidentiality for all communications, to warrant inquiry into the potential conflict involved in the attorney's role as plaintiff's counsel in that action. *Id.* at 109.

Here, as in *Glueck* and *Marshall*, Ferrigno's relationship with the Board has sufficient aspects of the attorney-client relationship to warrant inquiry into the potential conflict in this action. Ferrigno is a member of the Board of Education—hence, a member of the defendant in this action. Moreover, Ferrigno is Vice President of the Board. She undeniably stands in a fiduciary relationship to the Board, much like an attorney's relationship to its client. *See Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976) ("A lawyer's duty to his client is that of a fiduciary or trustee." (citing *Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir. 1974) and *Spector v. Mermelstein*, 361 F. Supp. 30, 38 (S.D.N.Y. 1972))). Furthermore, as a fiduciary to the Board, it can be presumed that Ferrigno was privy to confidential discussions and involved in the

Board's decisionmaking, including decisionmaking with respect to Filippi's or other employees' potential legal claims against defendants. It can further be presumed that Ferrigno's discretion and confidentiality was expected with respect to such sensitive matters. Accordingly, the Court determines that sufficient aspects of an attorney-client relationship exist between Ferrigno and the Board for purposes of triggering inquiry into the potential conflict involved in her role as a member of the Morelli Firm in this action.

Because the Court determines that Ferrigno's relationship with the Board warrants inquiry into the potential conflicts in this case, the Court must next inquire whether Ferrigno's position with the Board and her position as a member of the Morelli Firm involve a "substantial relationship."[2]

---

[2] The Court notes that in cases of concurrent representation, the Second Circuit has ruled that it is "prima facie improper" for an attorney to simultaneously represent a client and another party with interests directly adverse to that client. *See Hempstead Video*, 409 F.3d at 133; *see also Cinema 5, Ltd.*, 528 F.2d at 1387. In such a case, the attorney "must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* In cases of successive representation, the Second Circuit has held that an attorney may be disqualified if "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Id.* (citing *Evans*, 715 F.2d at 791). However, because the situation in the instant case is not a scenario involving

According to the Second Circuit, disqualification should be granted "upon a showing that the relationship between the issues in the prior and present cases is 'patently clear' [or] when the issues involved have been 'identical' or 'essentially the same.'" *Gov't of India*, 569 F.2d at 740. Ferrigno was a member of the Board during the period in which plaintiff's claims against defendants arose. Specifically, Ferrigno was a member of the Board in October 2008, when the Morelli Firm wrote a letter to the Board, including Ferrigno, alerting its members to Filippi's grievances with Geras. As a member of the Board, Ferrigno also received plaintiff's counsel's letter dated November 7, 2008, regarding alleged retaliatory actions taken against Filippi as a result of her complaints about Geras's behavior. Thus, the Court determines that Ferrigno's position on the Board and her employment with the Morelli Firm involve a substantial relationship.

Next, the Court must inquire whether the potentially conflicted attorney involved had access to confidences or other privileged information. New York Rule of Professional Responsibility 1.6 provides that "[a] lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client." Rule 1.6(a). "Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." *Id.* Thus, confidential information need not be legal in nature. "Moreover, the court need not, indeed cannot, inquire whether the lawyer did, in fact, receive confidential information during his previous employment, [but] where 'it can reasonably be said that in the course of the former representation the attorney might have acquired the information related to the subject matter of his subsequent representation,' it is the court's duty to order the attorney disqualified." *Emle Indus.*, 478 F.2d at 571 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265 (S.D.N.Y. 1953)). It is reasonable to conclude that Ferrigno possesses confidential, relevant information and was privy to defendant's discussions regarding the Filippi matter. This would likely include any discussion regarding the merits of the claims made in Filippi's counsel's letters to the Board and any possible steps to take to resolve the claims. Thus, Ferrigno might have acquired confidential information as a result of her membership of the Board and position as its Vice President. *See Fund of Funds*, 567 F.2d at 236 ("Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it to telling advantage in the subsequent litigation. . . . . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case."). In short, the Court concludes that Ferrigno has a conflict of interest in this

_____

traditional concurrent legal representation but rather legal representation of one party and service on a board of directors that is the other party, the Court applies the more lenient standard applicable to successive representation. Because the Court determines that the instant representation does not pass muster under the more lenient standard, plaintiff of necessity could not make the showing required under the stricter concurrent representation standard.

case that requires disqualification under Rule 1.7.[3]

Having determined that Ferrigno has a conflict of interest in this case, the Court must next examine whether Ferrigno's conflict is imputed to the Morelli Firm. Rule 1.10 provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein." Rule 1.10(a); *see also Hempstead Video*, 409 F.3d at 133 ("An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences."). There is a presumption that client confidences are communicated among attorneys within a law firm. *See Marshall*, 952 F. Supp. at 110. However, there is a "strong trend" toward "allowing the presumption of confidence sharing within a firm to be rebutted." *Hempstead Video*, 409 F.3d at 133; *see also Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975) (noting that the inference that an attorney has knowledge of the confidences and secrets of his firm's clients is rebuttable, and that the standard to rebut the presumption should not be "unattainably high"). The presumption may be rebutted when appropriate and effective screening measures are implemented to prevent the dissemination of confidences by a disqualified attorney. *Marshall*, 952 F. Supp. at 110 (collecting cases).

Here, plaintiff contends that everyone working at the Morelli Firm is aware that Ferrigno is not to have any participation in, or knowledge about, Filippi's case. (Morelli Decl. ¶ 12.) Ferrigno does not have physical access to the files regarding plaintiff's case. (*Id.*) Further, plaintiff's counsel represents that Ferrigno will not receive any part of plaintiff's fees. (*Id.*) Plaintiff argues that these screening procedures are sufficient to guard against the exchange of any confidential information that Ferrigno allegedly may possess.

Although the presumption that client confidences are shared within a firm may certainly be rebutted, the presumption is much stronger within a small firm than a large firm. It is possible that the circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will effectively prevent disclosure. *See, e.g.*, *Papanicolaou v. Chase Manhattan Bank*, 720 F. Supp. 1080, 1086-87 (S.D.N.Y. 1989) ("This Court doubts whether any Chinese walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion and not prior to the arising of the conflict."). In *Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir. 1980), the Second Circuit found that proposed screening measures were not sufficient when the conflicted attorney was "a member of a relatively small firm," because there existed "a continuing danger that [the conflicted attorney] may unintentionally transmit information he gained through his prior association with [the plaintiff] during his day-to-day contact with defense counsel." *Id.* at 1058.[4] Other courts within this Circuit have

---

[3] At oral argument, counsel for plaintiff conceded that Ferrigno had a conflict that required her disqualification in this case.

[4] This Court recognizes that *Cheng* is not binding precedent:

> *Cheng I* involved an appeal from the

followed *Cheng*'s guidance, often finding that screening procedures are inadequate in small firms. *See, e.g.*, *Crudele v. N.Y. City Police Dep't*, Nos. 97 Civ. 6687 (RCC), 97 Civ. 7366 (WHP), 97 Civ. 9515 (JSR), 97 Civ. 9516 (JSR), 2001 WL 1033539, at *4 (S.D.N.Y.

---

denial of a motion to disqualify counsel. After the Supreme Court held in *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981), that an order denying a motion to disqualify counsel is not immediately appealable, it granted certiorari in *Cheng* to vacate the judgment of this court. *See GAF Corp. v. Cheng*, 450 U.S. 903 (1981). On remand, we dismissed the appeal. *Cheng v. GAF Corp.*, 659 F.2d 1058 (2d Cir. 1981). Accordingly, *Cheng I* is not binding precedent, a fact we later recognized. *See Cheng v. GAF Corp.*, 713 F.2d 886, 891 (2d Cir. 1983). A number of district courts have nevertheless followed the reasoning of *Cheng*, especially when adjudicating disqualification motions involving small firms. *See, e.g.*, *Marshall v. State of N.Y. Div. of State Police*, 952 F. Supp. 103, 112 (N.D.N.Y. 1997) (disqualifying fifteen-member firm); *Baird v. Hilton Hotel Corp.*, 771 F. Supp. 24, 25, 27 (E.D.N.Y. 1991) (disqualifying nine-member firm)).

*Hempstead Video*, 409 F.3d at 138 n.5. Nonetheless, because *Cheng I* was ultimately vacated based on Supreme Court precedent regarding the immediate appealability of motions to disqualify counsel—and not based on its discussion of screening measures—this Court recognizes the persuasiveness of the discussion regarding screening measures in small firms in *Cheng I*. However, as the Second Circuit recognized in *Hempstead Video*, the *Cheng I* decision should not be construed as setting forth a categorical rule that screening procedures at small firms are always insufficient; rather, that issue must be analyzed on a case-by-case basis. *Id.*

Sept. 7, 2001) ("This Court likewise concludes that the danger of inadvertent disclosure and the appearance of impropriety is sufficiently present here so as to require disqualification. Leeds, Morelli & Brown is comprised of only 15 lawyers."); *Marshall*, 952 F. Supp. at 112 ("[T]he relatively small size of the Ruberti Firm (approximately 15 lawyers) raises doubts that even the most stringent screening mechanisms could have been effective in this case."). Even the appearance of impropriety is of particular concern with regards to screening procedures in a small firm, *see Cheng*, 631 F.2d at 1058-59, and in a firm as small as the Morelli Firm—which has only six[5] lawyers, the appearance of impropriety due to concerns about the efficacy of screening procedures, is heightened. Thus, Ferrigno's relationship with the Board and any concomitant conflict is imputed to the Morelli Firm, which represents plaintiff in this action.

Here, the Court is mindful that, when examining a potential conflict and whether disqualification is warranted, an attorney "must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *Cinema 5, Ltd.*, 528 F.2d at 1387 (emphasis added); *Crudele*, 2001 WL 1033539, at *5 ("Plaintiffs suggest that the appearance of impropriety is minimal here because Wirenius had only 'limited' involvement with the sick leave cases while at the Law Department. The Court cannot credit this argument. . . . Although this Court will

---

[5] The Court notes that although the Firm's website lists four lawyers employed at the Firm, Ferrigno is not listed on the website. (*See* Defs.' Mot. Ex. B.) Plaintiff's counsel confirmed at oral argument that the Firm currently is comprised of six lawyers.

not assume any actual wrongdoing on the part of Wirenius or Leeds, Morelli & Brown, the mere fact that Wirenius possessed such a document at the firm's office creates a very clear appearance of impropriety. That appearance, combined with the inadequacies of screening in the small firm context, leads the Court to favor disqualification in this situation."). To be sure, "if after considering all the precautions taken by the [firm whose disqualification is sought] this Court still harbors doubts as to the sufficiency of these preventive measures, then we can hardly expect [the concurrent client] or members of the public to consider the attempted quarantine to be impenetrable." *Cheng*, 631 F.2d at 1058. After considering all the relevant factors, as well as the implemented screening procedures utilized by the Morelli Firm, this Court concludes that disqualification is necessary to prevent any actual or apparent conflict in loyalties based upon Ferrigno's position as an associate at the Morelli Firm and as Vice President of the Board of Education.

The Court's determination on this issue is consistent with non-binding decisions in other jurisdictions under analogous circumstances. For example, in *Berry v. Saline Mem'l Hosp.*, 907 S.W.2d 736, 739-41 (Ark. 1995), the Supreme Court of Arkansas affirmed the disqualification of a firm representing a patient in a state FOIA lawsuit against a hospital where an attorney at the firm had formerly served on the hospital's board of directors. The court explained:

> A member of a hospital's board of directors holds a fiduciary relationship with the hospital. One who is in such a relationship may not assume a position in which his personal interest might conflict with his fiduciary duty as a member of the board. When a lawyer is on the board of a hospital, the lawyer owes a fiduciary duty to the hospital, and the lawyer should not take any action that conflicts with that duty, such as filing a suit against the hospital.

*Id.* at 739 (citations omitted). Thus, the court concluded that the service on the board of directors by one partner at the law firm disqualified the entire firm in subsequent matter where the board member obtained information substantially related to representation of the subsequent client. *Id.* at 739-40; *see also Allen v. Academic Games Leagues of Am.*, 831 F. Supp. 785, 788-90 (C.D. Cal. 1993) (attorney and his firm were disqualified from representing defendants in lawsuit where attorney had, among other things, been a non-lawyer board member for the plaintiff); *In re Mortgage & Realty Trust*, 195 B.R. 740, 745 (Bankr. C.D. Cal. 1996) (under California law, an attorney's conflicting fiduciary obligations to Chapter 11 debtor-real estate investment trust and its creditors, which was based upon his past service on the trust's board of trustees, disqualified both attorney and attorney's law firm, including all of its domestic and foreign offices, from representing an adversary defendant in the bankruptcy proceeding); *William Raley Co. v. Superior Court*, 197 Cal. Rptr. 232, 237-38 (Ct. App. 1983) (finding, in an action for breach of lease agreements against a corporation, that the trial court abused its discretion by refusing to disqualify law firm representing plaintiff where a senior partner of the law firm was a member of a trust investment committee and a director of the bank that was the trustee of 100% of the

common stock of defendant corporation); *accord Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 441-42 (9th Cir. 1983) (former National Labor Relations Board attorney was properly disqualified, as well as his law firm, from representing the defendants in an unfair labor practices action where attorney investigated incidents at NLRB that were the subject of the lawsuit).[6]

(b) Waiver of Conflict

Plaintiff contends that, even if Ferrigno (and therefore the Morelli Firm) is conflicted, any conflicts were waived by both the Board and plaintiff. Defendants contend that the conflict is non-waivable, or that, in the alternative, the Board has not adequately waived the conflict. The Court agrees with defendants, and concludes that the conflict is not waivable and, in any event, the defendant Board has not sufficiently waived the present conflict even if it were waivable.

Notwithstanding the existence of a concurrent conflict of interest under Rule 1.7(a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same

litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

Rule 1.7(b). Specifically, defendants argue that this conflict is not waivable because, per subsection (3), this representation involves the assertion of a claim by one client against another client represented by the lawyer in the same litigation, and per subsection (4), each affected client has not provided informed, written consent. As set forth below, the Court agrees.

First, the Morelli Firm's continued representation of plaintiff involves the assertion of a claim by one client against another client represented by the lawyer in the same litigation. Specifically, Ferrigno stands on both sides of this litigation. Ferrigno is a fiduciary to the Board of Education, one of the defendants in this action. As discussed *supra*, Ferrigno's fiduciary relationship to the Board is sufficient to qualify as "representation" of the Board within the meaning of Rule 1.7(a). Ferrigno is also a member of the Morelli Firm, the counsel to plaintiff in this action. When such a situation is present, and a counsel's clients stand on both sides of the same litigation, the conflict is non-waivable under Rule 1.7. Thus, the Court concludes that this conflict is not consentable under Rule 1.7(b)(3).

Second, even assuming *arguendo* that the instant lawsuit did not involve a conflicted counsel's clients on both sides of the same litigation and could be waived, the Court concludes that there has not been informed, written consent by the defendant Board. Plaintiff argues that defendants consented to this conflict. Defendants argue that each affected client has not given valid informed

---

[6] At oral argument, in response to a question from the Court asking for any case authority under New York law in which a court denied a motion for disqualification under circumstances analogous to the instant case, plaintiff's counsel did not identify any such case.

consent, confirmed in writing, to allow for the Morelli Firm's continued representation of plaintiff, as required by Rule 1.7(b)(4). The Court concludes that the Board's purported oral consent to Ferrigno's employment with the Morelli Firm is not sufficient to waive the conflict present here.

In September 2009, when the Morelli Firm was considering making a full-time offer of employment to Ferrigno, she consulted with the Board before she was offered a position. The Board members approved of Ferrigno's employment with the Morelli Firm, provided that she did not participate in Filippi's case. The Morelli Firm also consulted with plaintiff prior to offering Ferrigno employment. Plaintiff also alleges that she was "fully aware of the situation [Ferrigno's association with the Board of Education], and told Morelli that [she] did not have a problem with the hiring of Ferrigno," with the understanding that Ferrigno would have no access to plaintiff's file and would not participate in plaintiff's case in any way. (Filippi Decl. ¶ 4.)

Informed consent "requires that each affected client be aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client." Rule 1.7, cmt. 18. Plaintiff has not demonstrated that when the Board consented to Ferrigno's employment with the Morelli Firm, the Board understood the material and reasonably foreseeable ways that the potential conflict could adversely affect the Board. At the time the Board provided its consent in September 2009, plaintiff had not yet filed the instant lawsuit against the Board. The Court does acknowledge that this litigation might have been foreseeable in light of plaintiff's EEOC charge regarding the alleged discrimination and retaliation to which she

was subjected. Nonetheless, it is unclear whether the Board had retained legal counsel at that stage and whether it understood the possible implications of Ferrigno's employment with the Morelli Firm. In order to be effective, consent to a conflict must be *informed*. The effectiveness of a waiver made in advance of an actual conflict is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. Rule 1.7 cmt. 22. Furthermore, plaintiff has not demonstrated that written consent to the conflict was provided by the Board. The Court further notes that, under Rule 1.7, a client who has given consent to a conflict may revoke the consent. Rule 1.7 cmt. 21. In light of the instant motion to disqualify, it is clear that defendant Board is revoking its consent to this conflict. Thus, the requirements of Rule 1.7(b), which allow for the waiver of certain conflicts if consent is obtained, cannot be met in the instant case.[7]

---

[7] Plaintiff also argues that equitable estoppel precludes granting the motion for disqualification. "Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (internal citations omitted). "'Estoppel' generally means that one party in a dispute should not be permitted to reap any benefit from its own misrepresentations." *United States v. Schmitt*, 999 F. Supp. 317, 360 (E.D.N.Y. 1998). To establish a claim for equitable estoppel under New York law, a party must show: "(1) [a]n act constituting a concealment of facts or a false misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual or constructive knowledge of the true facts by the wrongdoers; and (4) [r]eliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *MCI LLC v. Rutgers Cas. Ins. Co.*, No.

Accordingly, the instant litigation involves the Board for which Ferrigno serves as a fiduciary and the Morelli Firm for which Ferrigno is an employee whose conflicts are imputed to the entire firm. Moreover, the instant lawsuit involves the assertion of a claim by a client of the Morelli Firm against the Board on which Ferrigno serves, thus preventing consent to the conflict. In any event, even if the conflict could be waived, the Court is not satisfied that the Board provided informed, written consent to the instant conflict and all its attendant circumstances, and even if it did, it is revoking such consent, which it is entitled to do. Thus, even if the conflict could be waived, the Court finds that the Board has not waived such conflict in this case.

06 Civ. 4412 (THK), 2007 WL 2325867, at *16 (S.D.N.Y. Aug. 13, 2007) (footnote and citation omitted). Plaintiff cites to no cases in which equitable estoppel would be available in the disqualification context nor has plaintiff demonstrated that equitable estoppel is warranted in the instant case. Equitable estoppel requires actual or constructive knowledge of the true facts by the wrongdoers. Plaintiff argues that "it is sufficient that the party being estopped knew or had reason to believe that their acts or inaction might prejudice the party asserting the estoppel." *Id.* at *16 n.17 (citation and internal quotations omitted). However, as discussed *supra*, the Court concludes that the Board likely did not have knowledge of the extent of the conflict that would arise from Ferrigno's employment with the Morelli Firm. Furthermore, plaintiff has not demonstrated that it has been prejudiced or changed its position "to its substantial detriment." *Id.* at *16. Plaintiff filed this action within two months of Ferrigno's acceptance of employment with the Morelli Firm. This litigation is still in its infancy. Plaintiff's opposition papers do not indicate how plaintiff will be significantly prejudiced by the disqualification of the Morelli Firm.

2. Existence of a Conflict of Interest Under Rule 1.11

Defendants further contend, in the alternative, that the Morelli Firm's continued representation of plaintiff violates Rule 1.11 because Ferrigno was and remains a public officer. Plaintiff disputes this, arguing that there is no proof that Ferrigno was "personally involved" in any discussion or decisions regarding Filippi's claims against the Board and the district's employees as a member of the Board. Plaintiff further claims that, even if Ferrigno was personally involved, the conflict is waivable. As set forth below, the Court agrees with the defendants and finds that disqualification of the Morelli Firm is also warranted in the alternative, under Rule 1.11.

Rule 1.11 provides:

(a) Except as law may otherwise expressly provide, a lawyer who has formerly served as a public officer or employee of the government:

. . .

(2) shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation. This provision shall not apply to matters governed by Rule 1.12(a).

Rule 1.11(a)(2). This conflict is further imputed to a government officer's law firm, unless certain conditions are met:

(b) When a lawyer is disqualified from representation under paragraph (a), no

lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the firm acts promptly and reasonably to:

(i) notify, as appropriate, lawyers and nonlawyer personnel within the firm that the personally disqualified lawyer is prohibited from participating in the representation of the current client;

(ii) implement effective screening procedures to prevent the flow of information about the matter between the personally disqualified lawyer and the others in the firm;

(iii) ensure that the disqualified lawyer is apportioned no part of the fee therefrom; and

(iv) give written notice to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule; and

(2) there are no other circumstances in the particular representation that create an appearance of impropriety.

Rule 1.11(b). Here, plaintiff does not dispute defendants' assertion that Ferrigno, as a member and Vice President of the Elmont Board of Education, is a public officer. Plaintiff instead argues that defendants must demonstrate that Ferrigno participated "personally and substantially" in this matter as a member of the Board of Education. The Court disagrees. Defendants assert, and plaintiff does not dispute, that the Board engaged in deliberations regarding

employment issues during the period of time that plaintiff filed letters of complaint and a charge with the EEOC regarding alleged discrimination and retaliation against her by employees of the School District. More importantly, as Vice President of the Board, Ferrigno personally received two letters from plaintiff's lawyer in late 2008 regarding alleged ongoing discrimination and retaliation. Plaintiff further alleges that, after the second letter to the Board, she was the victim of additional retaliation. Given these facts, this Court concludes that Ferrigno's position was such that she personally and substantially was a public officer in matters related to the instant litigation and that she received information related to the subject matter of the instant litigation. Thus, neither Ferrigno, nor her Firm, to which the conflict is imputed, should represent a client—here, Filippi—in connection with a matter in which she participated personally and substantially as a public officer.

Although plaintiff asserts that the Board had purportedly provided its consent to Ferrigno accepting employment with the Morelli Firm, as discussed *supra*, there is no written consent to the Morelli Firm's representation of plaintiff in this proceeding. *See* Rule 1.11(a)(2). Moreover, as discussed extensively *supra*, because of the small size of the Morelli Firm, the Court does not believe, under the circumstances here, that any screening procedures to prevent the flow of information about the matter between the personally disqualified lawyer and the others in the Firm will be fully effective. Finally, the Court notes, as discussed *supra*, that, even assuming there were not an actual conflict in this case, this particular conflict presents such an appearance of impropriety that disqualification is warranted. Thus, the Court determines that disqualification is also

warranted, in the alternative, under Rule 1.11.[8]

### 4. Disqualification of Eric Tilton

Defendants next contend that Eric S. Tilton, of counsel to the Morelli Firm and the other counsel-of-record for plaintiff in this action, should also be disqualified because he is associated with plaintiff's counsel for purposes of conflict imputation. Plaintiff argues that, as "of counsel," Tilton is removed from the Morelli Firm, and, therefore, imputation of any conflict is unwarranted. As set forth below, the Court concludes that, under the circumstances, disqualification of Tilton is warranted.

The Second Circuit has explained that conflict imputation may extend to "of counsel" to a firm, and that a functional approach should be applied to determine whether sufficient ties exist to warrant imputing a firm's conflict to its "of counsel":

> An "of counsel" who handles matters independent of his firm and scrupulously maintains files for his private clients separate from the files of the firm, is less likely to be

considered associated with the firm with respect to those clients than another attorney in the same position whose client files are not effectively segregated from those of the firm. Similarly, whether the screening between an attorney and his firm is considered adequate to rebut the presumption of shared confidences depends in part on the closeness and extent of the relationship between the attorney and the firm.

. . .

> The closer and the broader the affiliation of an "of counsel" attorney with the firm, and the greater the likelihood that operating procedures adopted may permit one to become privy, whether intentionally or unintentionally, to the pertinent client confidences of the other, the more appropriate will be a rebuttable imputation of the conflict of one to the other. Conversely, the more narrowly limited the relationship between the "of counsel" attorney and the firm, and the more secure and effective the isolation of nonshared matters, the less appropriate imputation will be.

*Hempstead Video*, 409 F.3d 134, 135.

Defendants have submitted evidence that that Tilton was an associate at the Morelli Firm before starting his own practice and becoming of counsel to the Firm and that he continues to share an office and a secretary with the Morelli Firm. Moreover, according to an email from Tilton, about 95% of the work that Tilton performs is for the Morelli Firm. *Cf. Regal Mktg. Inc. v. Sonny & Son Produce Corp.*, No. 01 Civ.1911(WK), 2002

---

[8] Defendants further argue that the representation of plaintiff by the Morelli Firm should be barred because Ferrigno, an employee of plaintiff's counsel's firm, may be called as a witness for the defendants in this case, in violation of Rule 3.7. Plaintiff argues that it is entirely speculative to assert that Ferrigno would be called as a witness in this action and that any testimony Ferrigno could provide can be obtained from other Board members. However, because the Court has already concluded that disqualification is warranted under Rules 1.7 and 1.11, the Court need not address whether disqualification also is warranted under Rule 3.7.

WL 1788026, at *6 (S.D.N.Y. Aug. 1, 2002). (finding conflict not imputed to of counsel when "[f]rom time to time," he had been associated with the conflicted law firm in an "'of counsel' capacity" and had assisted "with relatively few cases a year in an 'of counsel' capacity"). Plaintiff's counsel did not contest these facts in their opposition to the motion or at oral argument.

The Court recognizes that the fact that Tilton shares office space with the Morelli Firm is not determinative of the conflict inquiry. In particular, in *Hempstead Video*, the Second Circuit determined that there was no conflict even when the potentially conflicted of counsel sent a letter written on the conflicted firm's letterhead and faxed a copy to his co-counsel in that matter, and when a woman who identified herself as being from the conflicted firm telephoned the client to ask for his fax number on the potentially conflicted of counsel's behalf. *See Hempstead Video*, 409 F.3d at 130. The Court does note, however, that the relationship between the of counsel with the plaintiff's law firm in *Hempstead Video* was more attenuated than that in the present case. For example, the of counsel in *Hempstead Video* was not previously associated with the plaintiff's firm before becoming of counsel and only did some of his work for the firm—not 95% of his work.

Having carefully analyzed the facts in this case within the legal framework articulated by the Second Circuit in *Hempstead Video*, the Court concludes that disqualification of Tilton is warranted under the circumstances of this case. As noted above, although he no longer is with the Morelli Firm and instead is of counsel to the firm, it is uncontroverted that there is an extremely close affiliation between Tilton and the Morelli Firm—including that

Tilton previously worked at the Morelli Firm as an associate, worked on this matter while an associate, continues to share office space and a secretary with the Morelli Firm, and 95% of Tilton's work comes from the Morelli Firm. Given these uncontroverted facts, the Court concludes that there is a rebuttable imputation of the Morelli Firm's conflict to Tilton. Neither the Morelli Firm nor Tilton has provided the Court with any information to rebut the presumption in this case by showing that there is sufficient separation between Tilton and the Morelli Firm that the Court should not presume that client confidences are shared and that the conflict should not be imputed. *See, e.g.*, *Pierce & Weiss LLP*, 2010 WL 546060, at *12. Thus, Ferrigno's conflict is imputed to Tilton, and the motion to disqualify Tilton as counsel for plaintiff is granted.

* * *

In sum, the Court finds that there is a conflict of interest—as well as a strong appearance of impropriety—with the continued representation of plaintiff by the Morelli Firm, since it employs a member of defendant Elmont Board of Education. Defendants have demonstrated that the Morelli Firm's continued representation of plaintiff presents a conflict of interest that violates Rule 1.7 and Rule 1.11. Moreover, the Court concludes that this interest is not waivable under the circumstances here. Indeed, "sometimes, even with full disclosure and consent, the interests represented are so adverse that dual representation is improper." *Booth v. Continental Ins. Co.*, 634 N.Y.S.2d 650, 656 (Sup. Ct. 1995) (citing 7A CJS Attorney & Client § 154). In any event, the Court does not believe that the Board has waived this conflict. Moreover, the Court cannot be confident that any screening

procedures implemented by the Morelli Firm will be sufficient to protect against the exchange of confidential information regarding defendant Board of Education between Ferrigno and other members of the Morelli Firm. Mindful that the Second Circuit has instructed that any doubt should be resolved in favor of disqualification, *Hull*, 513 F.2d at 571, this Court grants the motion to disqualify the Morelli Firm as counsel to plaintiff in this action. Moreover, because plaintiff has not rebutted the presumption that client confidences will also be shared with Tilton, of counsel to the Morelli Firm, because of the close affiliation between them, the motion to disqualify Tilton is also granted.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to disqualify the Morelli Firm is granted. Defendants' motion to disqualify Eric S. Tilton is also granted. Plaintiff will have 30 days to obtain new counsel and have that counsel file a notice of appearance in this action, or to make a motion for appointment of counsel, or to file a letter stating that she wishes to proceed *pro se*.


SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 2, 2010
Central Islip, New York


\* \* \*

The attorneys for plaintiff are Eric S. Tilton of Eric S. Tilton, P.L.L.C., 193 E. Main Street, Babylon, NY 11702 and Steven A. Morelli of The Law Offices of Steven A. Morelli, P.C., 1461 Franklin Ave., Garden City, NY 11530. The attorneys for defendants Elmont Union Free School District Board of Education and Al Harper are Steven C. Stern and Leo Dorfman of Sokoloff Stern LLP, 355 Post Avenue, Suite 201, Westbury, NY 11590 and Rondiene Erin Novitz of Cruser Mitchell & Novitz, LLP, 175 Pinelawn Road Suite 301, Melville, NY 11747. Robert Geras is also represented by Rondiene Erin Novitz.