# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

Nº 09-cv-4675 (JFB) (ARL)

————————————————

### KARIN FILIPPI,

Plaintiff,

VERSUS

## ELMONT UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION, AL HARPER, and ROBERT GERAS,

Defendants.

————————————————

**MEMORANDUM AND ORDER**
September 27, 2012

————————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Karin Filippi ("Filippi" or "plaintiff") commenced this action against Elmont Union Free School District Board of Education ("School District"), Al Harper ("Harper"), and Robert Geras ("Geras"), alleging that the School District discriminated against her on the basis of her gender and good faith opposition to discriminatory practices in violation of Title VII of the Civil Rights Act, that all defendants discriminated against her on the basis of her gender and good faith opposition to discriminatory practices in violation of the New York State Human Rights Law, and that defendants Harper and Geras aided and abetted the discriminatory treatment about which plaintiff complained in violation of the New York State Human

Rights Law.[1] In particular, plaintiff alleges that plaintiff complained to her union representative, after receiving a video circulated among School District employees for "Slap Your Co-Worker Day," which depicted a man punching a woman. Plaintiff alleges that after she made her complaint, she was subject to retaliatory and discriminatory conduct. Specifically, plaintiff alleges that she was transferred from her position as a district-wide secretary to a position as one of three secretaries in an elementary school. Plaintiff seeks

---

[1] In her complaint, plaintiff also asserted a hostile work environment claim in violation of Title VII. The defendants moved for summary judgment on this claim, and plaintiff failed to oppose the defendants' motion with respect to this claim. At oral argument, plaintiff's counsel confirmed that plaintiff was withdrawing the hostile work environment claim. Also, at oral argument, counsel for Geras withdrew the motion for sanctions.

compensatory and punitive damages, and attorneys' fees and other costs.

The defendants now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the School District's summary judgment motion on the federal claims against the School District, and declines to exercise supplemental jurisdiction over the state law claims.

With respect to the gender discrimination claim, even construing the evidence most favorably to plaintiff, no rational jury could find in plaintiff's favor. First, given the undisputed facts, no rational jury could find that the transfer was an adverse employment action. The following facts are uncontroverted: (1) plaintiff remained a Senior Account Clerk, and her supervisor in the new position (like the prior position) continued to report to the Superintendent; (2) plaintiff's salary and medical benefits were not impacted in any way, and her salary has increased every year since she began working in the District; (3) plaintiff performed similar work in both positions (including answering telephones, making copies, performing general administrative work, and making spreadsheets); and (4) plaintiff enjoys working with children and with her supervisor in the new position. Although plaintiff asserts (for the first time) in her opposition that there are certain job responsibilities in the prior position that are more advanced (such as monitoring the status of employee workers' compensation claims and the processing of Notice of Claims relating to potential litigation), these alleged discrepancies in administrative responsibilities are insufficient to create a genuine issue of fact on this issue. Even construed most favorably to plaintiff, no rational jury could find these differences

sufficiently adverse to qualify as an adverse employment action under Title VII.

In any event, even assuming *arguendo* that an adverse employment action could be proven, no rational jury could find that plaintiff was transferred based on gender. To the extent that plaintiff suggests that she was "targeted" based on her gender for her involvement in the "Slap Your Co-Worker" email, that argument is utterly without merit because it is uncontroverted that three of the four other employees, whom she argues were involved in the circulation of the email and not "targeted" for discipline, were women. Given the undisputed facts, no inference of gender discrimination can possibly be drawn from any similarly situated employees. Moreover, there is absolutely no other evidence in the record from which a rational jury could find that the transfer was based on gender.

The retaliation claim likewise cannot survive summary judgment for a number of reasons. No rational jury could conclude that the plaintiff had a *reasonable* basis for a claim of discrimination or a hostile work environment based on gender. Plaintiff's purported protected activity was based upon (1) her complaint about the email, and (2) her complaint that Geras was mean to her, while showing preferential treatment to another female employee. With respect to the email, it is uncontroverted that: (1) it was sent to plaintiff by a female co-worker: (2) plaintiff did not believe the email had anything to do with her; (3) plaintiff only took "minor offense" (in her own words) to the email, and did not interpret the email to mean that anyone would slap her. Under these uncontroverted facts, the conduct regarding this single email is not sufficiently severe or pervasive to provide a reasonable belief of a hostile work environment that could be the basis for a retaliation claim. In fact, plaintiff has voluntarily dismissed any

hostile work environment claim. Similarly, with respect to her complaints about Geras, plaintiff acknowledged in her deposition that Geras did not sexually harass her in any way. There is no evidence that her complaints related to gender discrimination. Instead, the complaints related to disputes plaintiff had with a female co-worker (including an allegation by plaintiff that the female co-worker had lunged at her in an aggressive manner) and plaintiff's belief that Geras showed favoritism towards the other female co-worker. Nothing about these complaints, however, suggested that the alleged unequal treatment by Geras between two female co-workers was based on gender. In short, no rational jury could find that these allegations could provide a good faith, reasonable belief of discrimination based on gender, and certainly no employer would reasonably view them as such. Title VII does not enforce a general civility code in the workplace, and, in the instant case, although plaintiff suggests that Geras lacked civility, there is simply no basis from which a reasonable person could conclude it was based on gender; thus, the retaliation claim must fail. In an event, even if plaintiff's complaints could qualify as a good faith, reasonable complaint of discrimination that could qualify as protected activity, the retaliation claim would still fail because it is uncontroverted that the other female employee with whom plaintiff was not getting along (and who did not engage in protected activity) was transferred at the same time as plaintiff. Therefore, it is clear that plaintiff was not treated differently because of her protected activity, and no rational jury could conclude otherwise.

Accordingly, neither of the federal claims can survive summary judgment, and the Court declines to exercise supplemental jurisdiction over the state law claims.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

1. Plaintiff's Role at the School District

Plaintiff began working for the School District in March 2006. (Defs. Elmont UFSD & Harper's 56.1 ("Dist. Defs.' 56.1") ¶ 2.) Plaintiff worked as a secretary to the Director of Business & Facilities, Robert Geras, from March 2006 through November 2008. (*Id.* ¶¶ 4, 8; Def. Geras' 56.1 ¶ 3.) This secretary designation was a Senior Account Clerk position, the civil service designation that plaintiff holds. (Dist. Defs.' 56.1 ¶¶ 2, 4.) Geras participated in plaintiff's hiring, and recommended to the School District's Board of Education that plaintiff be hired. (*Id.* ¶¶ 9-10.)

2. The "Slap Your Co-Worker Day" Email

On October 20, 2008, one Maria Gilbert sent plaintiff an email titled "Slap Your Co-Worker Day." (Dist. Defs.' 56.1 ¶¶ 52-53; Def. Geras' Ex. A, Filippi Deposition

---

[2] In addition, although the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record, when utilizing the 56.1 Statements for purposes of this summary of facts.

Transcript ("Filippi Dep.") at 132.) When Gilbert forwarded the email to plaintiff, Gilbert wrote, "Check out the original senders! Top of your list?" (Dist. Defs.' 56.1 ¶ 61.) The email contained an embedded video showing a man punching a woman in the face. (Def. Geras' Ex. A, Filippi Dep. at 135.) According to the email chain, Gilbert received the email from David Kirk, a custodian for the School District. (Dist. Defs.' 56.1 ¶ 54.) The email chain also reflects that Kirk received the email from Gena Hollwedel, one of plaintiff's co-workers. (*Id.* ¶ 55.) The email stated that "Slap Your Co-Worker Day" is coming and that "October 21st is the official Slap Your Irritating Co-workers Holiday. . . ." (*Id.* ¶¶ 57-58.) According to plaintiff, "some people could take [the video] as a joke" and she did not interpret the email to mean that any of her co-workers wanted to slap her. (*Id.* ¶¶ 60, 62.) Plaintiff did not believe that the email had anything to do with her. (*Id.* ¶ 63.)

Plaintiff forwarded the email to Joanne Manetta, another clerical worker who was also President of her union. (*Id.* ¶ 66.) According to the plaintiff, she informed Manetta that she found the video offensive "[b]ecause of the comments that were made in it, and the embedded video showing a man punching a woman in the face."[3] (Def. Geras' Ex. A, Filippi Dep. at 135.) According to plaintiff's deposition testimony, she wanted the matter handled "just amongst the union" and wanted to "join and talk to the other women and tell them that, you know, these types of things shouldn't be sent out." (*Id.* at 139-40.)

Manetta forwarded the email to Geras. (Dist. Defs.' 56.1 ¶ 67.) The email that Manetta sent to Geras did not list plaintiff or Gilbert as senders or recipients of the email. (*Id.* ¶ 68.) According to Geras, he found the email in poor taste, offensive, and inappropriate for circulation in the workplace. (*Id.* ¶¶ 74-75.) After Geras received the email from Manetta, Geras asked plaintiff if she knew about the email. (*Id.* ¶ 73.) Geras called plaintiff into his office by yelling, "Do you know anything about this email that's being circulated?" (*Id.* ¶ 76.) Plaintiff informed Geras that she knew about the email, and that she had sent it to Manetta. (*Id.* ¶ 77.) Geras asked plaintiff who had sent the email to her. (*Id.* ¶ 78.) According to a memorandum drafted by plaintiff and given to Superintendent Harper, dated October 21, 2008, plaintiff refused to tell Geras who had sent her the email. (Dist. Defs.' S, Memorandum.) According to plaintiff's deposition testimony, she did not refuse to provide Geras with information regarding who had sent her the email. (Def. Geras' Ex. A, Filippi Dep. at 149.)

Geras was upset that plaintiff reported the email to the union, but not to him. (Dist. Defs.' 56.1 ¶ 80.) According to Geras' deposition testimony, Geras believed that the appropriate recourse would have been for plaintiff to forward the email to plaintiff's supervisor, consistent with the School District's policy. (Dist. Defs.' Ex. E, Geras Deposition Transcript ("Geras Dep.") at 86.) According to plaintiff's deposition testimony, Geras got angry and informed plaintiff that she worked for him, not the union. (Def. Geras' Ex. A, Filippi Dep. at 145-46.) According to plaintiff, Geras stated

---

[3] On the issue of whether plaintiff found the email offensive, defendants have submitted uncontroverted evidence that plaintiff herself circulated offensive emails that mocked others based upon their gender, religion, national origin, and sexual orientation. (*See* Dist. Defs.' 56.1 ¶¶ 109-30; Exs. M-Q, T, Emails Circulated by Plaintiff.) In fact, some of the emails plaintiff circulated were offensive to women. (Dist. Defs.' 56.1 ¶¶ 123-30.) However, the Court assumes, for purposes of the summary judgment motion, that plaintiff found the email at issue offensive.

that "it would be duly noted," which plaintiff took to mean that something would be placed in her personnel file. (*Id.* at 146.)

When defendant Harper learned that plaintiff was offended by the email, he called plaintiff in for a meeting. (Dist. Defs.' 56.1 ¶ 83.) Harper told plaintiff that he would investigate the circumstances surrounding the circulation of the email. (*Id.* ¶ 84.) Harper also directed the District's technology department to block further circulation of the email. (*Id.* ¶ 85.) Harper directed Geras to conduct an investigation regarding the circulation of the email. (*Id.* ¶ 86.) According to Geras' memo to Harper dated October 28, 2008, Geras identified certain employees who sent the email on the District network to other District employees, including Janet Stebner, Gena Hollwedel, Peggy Midgette, and David Kirk. (Dist. Defs.' Ex. I, Memo dated October 28, 2008.) Geras also stated that he spoke with Stebner, Midgette, Hollwedel, and Kirk regarding the email and advised them that the email was inappropriate for the workplace, and the four employees admitted sending the email, apologized, and assured Geras that such an incident would not recur. (*Id.*) Geras also noted that, on October 21, 2008, he discussed the email with plaintiff, who refused to tell him from whom she had received the email. (*Id.*)

Geras found that, on the version of the email Manetta sent to Harper and Geras, plaintiff and Gilbert's names were not listed on the email; Geras determined that someone had edited the email to remove their names. (*Id.*) Geras also found that the computer accounts for Manetta, Gilbert, and plaintiff were purged of the email, and the technology department was unable to recover the emails. (*Id.*)

### 3. Plaintiff's Meeting with Barbara Schwartz

According to plaintiff's deposition testimony, she told Barbara Schwartz, the District's Harassment Officer, that she felt "that Mr. Geras was harassing me, that he wasn't treating me fairly." (Def. Geras' Ex. A, Filippi Dep. at 198.) In Schwartz's notes regarding the interview, Schwartz noted that plaintiff related her encounter with Geras the day before, and stated that "she found him to be intimidating and threatening." (Pl.'s Ex. 12, Schwartz Notes.) Plaintiff stated that when she dropped off budget work items to Geras, he asked her to come back and asked her if it was complete with no mistakes. (*Id.*) Plaintiff stated that she felt Geras "is going to nitpick and harass her." (*Id.*) Plaintiff also related that "anything to do with Gena Hollwedel [plaintiff's co-worker] is always an issue. [Plaintiff] report[ed] that Mr. Geras shows partiality. Plaintiff also reported "an issue with some work" in May, and her belief that "since everyone's come upstairs, it is not a good work atmosphere." (*Id.*) Plaintiff related a July incident with Hollwedel where Hollwedel "lunged at Ms. Filippi." (*Id.*) Plaintiff also reported "that there has been chronic teasing from Mr. Geras November to June. The teasing stopped in July."[4] (*Id.*) Plaintiff "reported that is a hostile work environment and she wanted it on the record." (*Id.*)

Though Schwartz was the School District's "Harassment Officer," according to plaintiff's deposition testimony, plaintiff understood that "any problems that related to the workplace between [plaintiff] and [her] administrator should be reported to [Schwartz]." (Def. Geras' Ex. A, Filippi

---

[4] Nothing in the record suggests that this "teasing" was based on plaintiff's gender or was sexual in nature.

Dep. at 199.) At plaintiff's deposition, the following exchange took place:

> Q. Did you report sexual harassment to her?
>
> A. I reported harassment to her.
>
> Q. Harassment, not sexual?
>
> A. Right, it was all under the same umbrella, the way it was explained to me.
>
> Q. So if a boss verbally reprimands someone, that falls under the umbrella of sexual harassment?
>
> [. . . ]
>
> A. Yes.

(*Id.* at 199.) In this meeting, plaintiff did not report that Geras touched her inappropriately or said anything sexual to her. (Dist. Defs.' 56.1 ¶ 147.) According to plaintiff's deposition testimony, neither Geras nor Harper did "anything of a sexual nature" toward her.[5] (*Id.* ¶ 149.)

---

[5] Despite plaintiff's unequivocal testimony that neither Geras nor Harper did anything of a sexual nature toward her, and that such allegations were not a part of this lawsuit, (Def. Geras' Ex. A, Filippi Dep. at 202), plaintiff also testified that Geras stood close to her and looked down her shoulder. (*Id.* at 441.) Plaintiff believed that he was looking down her blouse. (*Id.*) Plaintiff never saw him look down her blouse. (*Id.* at 457.) Plaintiff could not recall if she ever told anyone that she saw Geras looking down her blouse. (*Id.* at 442.) Schwartz's notes of the meeting with plaintiff do not contain such an allegation. (Pl.'s Ex. 12, Schwartz Notes.) Plaintiff's counsel's letter to the Elmont Union Free School District Board of Education, discussed below, does not include an allegation of this conduct. (Pl.'s Ex. 5, Morelli Letter.) Plaintiff's EEOC charge is devoid of such an allegation. (Pl.'s Ex. 7, EEOC Charge of Discrimination.) Plaintiff's complaint does not allege such conduct by Geras. There is nothing in the record

### 4. Plaintiff's Attorney's Letters

Plaintiff met with an attorney, Steven A. Morelli, in October 2008. (Dist. Defs.' 56.1 ¶ 168.) Morelli sent the School District a letter dated October 31, 2008. (Dist. Defs.' 56.1 ¶ 174; Pl.'s Ex. 5, Morelli Letter.) Morelli's letter laid out plaintiff's complaints regarding Geras, which Morelli states began in November 2007 when Geras "began to target [plaintiff] with unwelcome and, in many cases, extremely disturbing unprofessional attacks which have now culminated to the point where this Board should be concerned for her safety." (Pl.'s Ex. 5, Morelli Letter at 1.) First, Morelli's letter outlined allegations of "favoritism and preference for Hollwedel[ ] to the exclusion of Filippi." (*Id.*) Morelli's letter then recounts an incident in May 2008 when Geras "screamed and yelled at Filippi for leaving early [due to illness] and amazingly blamed her for the fact that [a] bid compilation was not yet complete, despite the fact that it was a department-wide problem." (*Id.* at 2.) The letter states that, with respect to this incident, Geras attempted to have Filippi meet with him and Hollwedel, which plaintiff refused without union representation; Geras then "began to scream and yell at Filippi in public and among her coworkers, telling her to 'go upstairs.' (like a parent to a child)."[6] (*Id.*)

---

to suggest that plaintiff communicated this allegation to anyone at the School District before her deposition.

[6] Morelli's letter states that Dr. Lynn Stuccio, the Director of Curriculum, witnessed this incident, and reported it to union representatives. (Pl.'s Ex. 5, Morelli Letter at 2.) The letter states that Dr. Stuccio's report was "presumably because it was completely inappropriate and in violation of the District's Code of Ethics." (*Id.*) The letter continues, "[s]pecifically, Board Policy 8000 (a)(II) states that 'Officers and employees are expected to conduct themselves in a businesslike manner . . . . [S]wearing, sexual harassment and similar unprofessional activities are strictly prohibited.' Likewise, Board

The letter states that, later that day, Geras yelled again and forced Filippi to have a meeting with Hollwedel "to discuss their disputes, which there really were none other than that Geras showed continued favoritism to Hollwedel to the exclusion of Filippi." (*Id.*) The letter states that the "favoritism toward Hollwedel and bias toward Filippi shows, at the very least, the appearance of an improper relationship between Geras and Hollwedel, professional or otherwise." (*Id.*) The letter states that Hollwedel would make false accusations against Filippi. (*Id.*)

The letter states further, that in July, "Geras displayed another inciden[t] of inappropriate and unprofessional favoritism toward Hollwedel." (*Id.* at 2-3.) The letter states that after Filippi asked a coworker where "everyone was," Hollwedel "lunged at Filippi is a physically aggressive manner yelling at her for allegedly 'interrogating' her coworkers about her whereabouts." (*Id.* at 3.) The letter states that Geras sided with Hollwedel and claimed that another employee agreed with his sentiment that Filippi "set off" Hollwedel by looking at the clock. (*Id.*)

The letter also recounts the events surrounding the "Slap Your Co-Worker Day" email. The letter states that Filippi "took minor offense to the email" and forwarded it to Manetta. (*Id.*) The letter states that, when Geras learned that Filippi had sent the email to Manetta, he raised his voice and yelled at Filippi. (*Id.*)

---

Policy 8000(b)(16) states that '[a]ny officer or employee shall treat the other members of the Board and/or employees of the district with courtesy and respect . . . . Denigration and personal attack . . . of another Board member or employee of the district shall be viewed by the Board as unethical behavior and misconduct which shall render him/her unfit to hold office of Board member or employee of the district." (*Id.* (alterations in orginal).)

The letter also states that "[w]e understand that this is not the first time Geras has retaliated against District employees or ignored complaints of discriminatory treatment." (*Id.*) The letter then relates an account of Geras' inaction when a female employee complained of sexual harassment by a male custodial employee and an allegation that Geras told the female employee to "back off" of the complaint. (*Id.*) The letter also relates that Geras was not disciplined for shoving an employee. (*Id.* at 3-4.)

The letter concludes that "Geras has now engaged on a course of conduct designed to punish Filippi for her complaints." (*Id.* at 4.) The letter alleges that a District employee contacted Manetta's friend to tell Manetta to "stay away from this one." (*Id.*) The letter states "[t]his kind of backhanded threat can only be seen as a retaliatory act based upon Filippi's complaints of unfair treatment." (*Id.*) The letter ends with several requests of the School District, including that it "take proper disciplinary action against those responsible for harassing our client or seeking to besmirch her good name and tarnish her career." (*Id.*)

Morelli sent a second letter, dated November 7, 2008, asserting that Geras retaliated against Filippi by asking her about a scar on her neck and assigning her work outside of her job responsibilities. (Dist. Defs.' 56.1 ¶¶ 190, 197.)

### 5. Defendant Harper's Actions Regarding the "Slap Your Co-Worker Day" Email

Mr. Harper circulated a memorandum, dated October 30, 2008, which stated, *inter alia*, "Please allow me to take this opportunity to remind you of your responsibilities regarding the use of computer technology." (Dist. Defs.' 56.1 ¶ 96.) The memorandum stated that "[a]ll

school technology may only be used for your official duties as an Elmont UFSD employee. This includes but is not limited to the district's e-mail system and the use of the Internet." (*Id.* ¶ 97.) The memorandum reminded the employees of their obligations under the Board of Education Policy 6530 and its implementing regulation, such as the requirement that "employees are expected to communicate in a professional manner consistent with applicable EUFSD policies and regulations governing the behavior of school staff." (*Id.* ¶ 98.) The memorandum stated "[t]he administrative regulation prohibits various inappropriate conduct including 'sending or displaying offensive messages or pictures' and the 'use of ECTS (Elmont computer and telecommunications system) for other than school related work or activities.'" (*Id.* ¶ 99.) Plaintiff was pleased that Harper sent the memorandum. (*Id.* ¶ 100.)

According to Harper's deposition testimony, Harper "thought the tone that [Geras] used and the manner in which he spoke with her, in [Harper's] investigation, led [Harper] to believe that that was inappropriate. No one should be spoken to in the tone in which [Harper] believed he used with Ms. Filippi." (Def. Geras' Ex. B, Harper Deposition Transcript ("Harper Dep.") at 92.) Harper placed a disciplinary letter in Geras' personnel file. (*Id.*; Pl.'s Ex. 11, Letter from Harper to Geras.)

### 6. Plaintiff's Assignment to the Dutch Broadway School

On November 12, 2008, Harper decided to transfer plaintiff to the Dutch Broadway School. (Dist. Defs.' 56.1 ¶ 232.) According to Harper's deposition testimony, he transferred plaintiff "[b]ecause she was unhappy in the workplace and [he] wanted to make her happy."[7] (Def. Geras' Ex. B, Harper Dep. at 139.) Ms. Hollwedel was transferred to the District's Transportation Department at the same time plaintiff was transferred. (*Id.* ¶ 238.)

Plaintiff's hours remained the same when she moved from the Facilities Department to the Dutch Broadway School. (*Id.* ¶ 239.) Plaintiff is still a Senior Account Clerk. (*Id.* ¶ 240.) Plaintiff's salary has increased every year since she began working in the District, either through raises or STEP increases.[8] (*Id.* ¶ 241.) Plaintiff's salary structure was not affected when she was transferred. (*Id.* ¶ 242.) Plaintiff's medical benefits have not changed since she began working for the District. (*Id.* ¶ 243.) Plaintiff likes her current supervisor, Mr. Aksionoff, who is the Principal of the Dutch Broadway School. (*Id.* ¶ 245.) Mr. Aksionoff, like Geras, reports directly to the Superintendent of Schools. (*Id.* ¶ 251.) During the summers, plaintiff works with the summer school principal, and has also done some work in the Transportation Department. (*Id.* ¶¶ 254, 258.)

At the Dutch Broadway School, plaintiff's responsibilities include answering telephones, making photocopies, correspondence, doing tutorials and spreadsheets for the assistant principal, and anything else the principal assigns. (*Id.* ¶ 265.) Plaintiff answered telephones, made photocopies and performed general secretarial work while working in the

---

[7] Plaintiff disputes this by citing to Geras' deposition testimony, in which he stated that he was told that a later investigation by Harper, "Nugent" and the SYSIR attorney disclosed that plaintiff was "a problem to the office and they wanted her away from the District office." (Pl.'s Ex. 2, Geras Dep. at 148.) Such evidence is inadmissible hearsay.

[8] According to plaintiff's declaration, there was no contract increase negotiated for the school year 2010-2011. (Pl.'s Decl. ¶ 68.)

business office. (*Id.* ¶ 267.) Plaintiff prepares spreadsheets at the Dutch Broadway School, as she did while working in the business office. (*Id.* ¶ 269.) Plaintiff also does programs for graduation and pre-kindergarten, which she enjoys. (*Id.* ¶ 266.) According to plaintiff's deposition testimony, she enjoys the "atmosphere of the person supervis[ing her]," working with the kids, and the variety of the work better at the Dutch Broadway School than at her prior placement. (Def. Geras' Ex. A, Filippi Dep. at 269-70.)

According to plaintiff's declaration submitted in opposition to the motions for summary judgment, there are aspects of her placement that she does not enjoy. According to the declaration, she is "only able to do[] routine duties such as answering phones, making copies, [and] handling correspondence." (Filippi Decl. ¶ 64.) Although plaintiff acknowledges that she develops spreadsheets for children who attend tutorials, she states that she performs "none of the advanced responsibilities [she] did at the Business Office such as preparing budget documents for the District's Board of Education, i.e. those related to the annual budget and monthly meetings; monitoring the status of employee workers' compensation claims; and processing and handling Notice of Claim relative to potential litigation against the District." (*Id.* ¶¶ 64-65.) Plaintiff states that she has "less decision-making ability and the new position requires less advanced skill-sets than my duties at the Business Office." (*Id.* ¶ 66.) Plaintiff also states that at Dutch Broadway, she is one of three secretaries to the principal, whereas in the Business Office, she was the District-wide secretary. (*Id.* ¶ 67.)

B. Procedural Background

Plaintiff filed the complaint in this action on October 28, 2009. Defendants School District and Harper (collectively, "District defendants") answered the complaint on January 5, 2010. Defendant Geras answered the complaint on January 25, 2010. On November 30, 2011, the District defendants and Robert Geras separately moved for summary judgment. Plaintiff submitted her opposition on February 3, 2012. The District defendants submitted their reply on March 14, 2012; defendant Geras submitted his reply on March 20, 2012. The Court held oral argument on April 13, 2012. At the oral argument, the Court requested supplemental briefing on the issue of whether plaintiff engaged in protected activity in connection with her retaliation claim. The defendants submitted a joint letter on April 25, 2012. Plaintiff submitted a response on May 10, 2012. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v.*

*Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Defendants Elmont Union Free School District and Harper and defendant Geras moved separately for summary judgment on the grounds that (1) plaintiff failed to produce sufficient evidence to support a disparate treatment claim, (2) plaintiff failed to produce evidence to support a retaliation claim, and (3) plaintiff's state law claims fail due to plaintiff's failure to comply with New York Education Law § 3813.[9] In particular, defendants argue that plaintiff has failed to establish a *prima facie* case of gender discrimination or retaliation.[10]

For the reasons set forth below, the Court grants summary judgment on plaintiff's gender discrimination and

retaliation claims under Title VII because plaintiff has failed to produce evidence to establish a *prima facie* case with respect to these claims. Because the Court disposes of plaintiff's federal claims, the Court does not address defendants' arguments with respect to the state law claims and declines to exercise supplemental jurisdiction over such claims.

### A. Plaintiff's Title VII Gender Discrimination Claim

#### 1. Applicable Law

Title VII prohibits discrimination against an employee based on her gender. *See* 42 U.S.C. § 2000e-2(a). Here, plaintiff claims she has been discriminated against by defendant on the basis of her gender.

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," i.e., that there was discriminatory intent. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000); *Fields v. N.Y. State Office of Mental Retardation & Dev'l Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step *McDonnell Douglas* test. First, a plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) he is a member of a protected class (2) who performed his job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of prima facie case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for the City*

---

[9] In addition, as stated *supra*, defendants moved for summary judgment on plaintiff's hostile work environment claim, which plaintiff did not oppose in the papers. As noted *supra*, plaintiff's counsel confirmed that the claim was being voluntarily dismissed.

[10] In their reply papers, the District Defendants argue that plaintiff's 56.1 Statement does not comply with Local Rule 56.1. (Dist. Defs.' Reply at 2-6.) In particular, defendants argue that "plaintiff's Rule 56.1 Statement is replete with false denials and denials without citation to the record." (*Id.* at 4.) However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 129 S. Ct. 2324, 2350 (2009); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 WL 1120602 at *2 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In their reply, defendants were able to respond fully to plaintiff's arguments regarding the factual record notwithstanding these defects in the Rule 56.1 Statement. Moreover, the Court has fully examined all of the cited evidence in the 56.1 statements to ensure there is admissible evidence in the record to support each and every contention. Thus, the Court is only considering facts supported by the record, and defendants have not been prejudiced by any defects in the plaintiff's Rule 56.1 statement.

*of New York*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see Reeves*, 530 U.S. at 142-43. The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar College*, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993) (citation omitted); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason. *See Fields*, 115 F.3d at 120-21; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell*, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

### 2. No Evidence of Adverse Employment Action

A plaintiff suffers an adverse employment action when he experiences a "materially adverse change in the terms and conditions of employment." *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), (quoting *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)). Typical adverse employment actions may include termination from a job, decrease in salary, material reduction in benefits or responsibilities, or a less distinguished title. *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Crady v.*

*Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Changes in assignments or duties that do not "radical[ly] change" the nature of work are not typically adverse employment actions. *See Galabya*, 202 F.3d at 641 (quoting *Rodriguez v. Bd. of Ed.*, 620 F.2d 362, 366 (2d Cir. 1980)).

Although the burden of establishing a *prima facie* case is minimal, plaintiff has failed to put forth evidence that would allow a rational factfinder to conclude that plaintiff was subjected to an adverse employment action. In other words, even if plaintiff's version of the evidence is credited, she has failed to point to any conduct that could constitute an adverse employment action as a matter of law that would support a claim for gender discrimination.

In particular, plaintiff alleges that her transfer from the position as a "District-wide secretary for the Business Office to being one (1) of three (3) secretaries to the principal of the Dutch Broadway Elementary School" was an adverse employment action. (Pl.'s Opp. at 18.) Plaintiff argues that, as a result of the transfer, plaintiff no longer performed advanced tasks such as preparing documents for the Board of Education, being apprised of the schedules of employees who reported to Geras, handling and monitoring the status of employees' workers' compensation claims, and processing and handling Notices of Claim relative to potential litigation against the District. (*Id.*) Plaintiff also argues that, as a result of the transfer, plaintiff was "relegated to doing basic duties such as answering phones, making copies, [and] handling correspondence."[11] (*Id.*)

This Court certainly recognizes that, under certain circumstances, a loss in job responsibilities in a transfer can constitute an adverse employment action. However, this is not one of those cases, and no rational jury could find otherwise given the uncontroverted facts in this record. Specifically, it is undisputed that (1) plaintiff's hours, title, salary and medical benefits remained the same after her transfer to Dutch Broadway, (2) plaintiff's new supervisor, like Geras, reported to the Superintendent of the District, (3) plaintiff answered telephones, made copies and performed general clerical work while at the Business Office, and does similar work at Dutch Broadway School, (4) plaintiff made spreadsheets at Dutch Broadway School, as she did in the Business Office, and (5) plaintiff enjoys working with children and her new supervisor in her new position.[12]

Not receiving a requested or desired assignment is not an adverse employment action. *See Bright v. LeMoyne Coll.*, 306 F. Supp. 2d 244, 254 (N.D.N.Y. 2004) (holding

---

[11] In their reply, defendants argue that much of plaintiff's opposition papers regarding her new position are inconsistent with her deposition testimony and should be disregarded. However, the

Court has fully considered the plaintiff's affidavit and concludes (as discussed below) that, even if true, the differences in responsibilities are insufficient to raise a genuine issue of fact on this element.

[12] Defendants also point to plaintiff's deposition testimony where she testified that she acknowledged that she performed complicated tasks at her new position at Dutch Broadway, including organizing programs for the school, preparing tutorials for the assistant principal, and working with forms and spreadsheets. (Def. Geras' Ex. A, Filippi Dep. at 266-69, 278-79.) Defendants further note that, with respect to spreadsheets, although plaintiff claims her prior position was more challenging, the only assignment in this case about which plaintiff complained was a difficult spreadsheet assignment while working in the Business Office, and at her new position, she is given more assistance with spreadsheet work. (*Id* at 279-80; Pl.'s 56.1 Counter Statement to Dist. Defs.' ¶ 204.) Thus, defendants suggest that any argument that the new position was less challenging is without merit. (District Defs.' Reply, at 2-3.)

that being given a different shift than the one requested is not an adverse employment action); *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 217-18 (E.D.N.Y. 2001) (concluding that listing a name wrong in the school directory, having difficulty obtaining a parking permit, not being named a department chair, and not being assigned to teach summer courses not adverse actions). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya*, 202 F.3d at 640 (quoting *Crady*, 993 F.2d at 136).

Plaintiff has not demonstrated that the transfer was materially adverse. Though plaintiff no longer performs certain job responsibilities, plaintiff has not demonstrated a material reduction in responsibilities. In addition, plaintiff has not demonstrated that the transfer is materially less prestigious, materially less suited to her skills, or materially less conducive to career advancement. *See Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 457 (2d Cir. 2009) ("[plaintiff] did not meet her burden of raising a genuine issue of material fact that her assignment to an admittedly equally paying and comparable job was 'materially less prestigious, materially less suited to [her] skills and expertise, or materially less conducive to career advancement.'" (quoting *Galabya*, 202 F.3d at 641 (alteration in original)). Her subjective belief that the new position is less prestigious, absent any objective evidence to support that position, is not enough. *See Beyer v. County of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) ("[W]e require objective indicia that the transfer denial 'created a materially significant disadvantage' in the working conditions of the aggrieved employee.") (citation omitted). In short, plaintiff's evidence is insufficient to raise any genuine issue of material fact that the

transfer constituted an adverse employment action against her.

Numerous other courts, including the Second Circuit have reached the same conclusion under analogous circumstances. For example, in *Robinson v. American International Group, Inc.*, No. 008 Civ. 1724 (LAK), 2009 WL 3154312 (S.D.N.Y. Sept. 30, 2009), *aff'd* 396 F. App'x 781 (2d Cir. 2010), plaintiff claimed that her assignment to be executive assistant to the then-President of the employer's warranty division, rather than the then-president of the excess casualty division, was an adverse employment action. In rejecting that argument and granting summary judgment for the defendant, Judge Preska explained:

> It is undisputed that when plaintiff began her job with [the new supervisor], her title and pay remained the same. It is undisputed also that [the new supervisor], like [her prior supervisor], reported directly to John Doyle, American Home's president. Despite this, plaintiff contends her assignment was an "adverse employment action" because her responsibilities while assigned to [the new supervisor] were "materially less prestigious, less suited the skills she had and were less conducive to career advancement" because [the new supervisor] had not had an assistant for at least five years and because she received a smaller raise in 2007 than did [her prior supervisor's] executive assistant.
>
> None of these contentions supports her argument. Plaintiff offers no evidence that her assignment to [the new supervisor] was less prestigious, and her personal beliefs to the contrary are insufficient to create a

genuine issue of material fact . . . . Any estimate of the hypothetical raise she would have received had she worked for [the prior supervisor] would be speculation and would not create a genuine issue of material fact sufficient to defeat summary judgment.

*Id*. at *5 (citations omitted); *see, e.g., Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 189 (2d Cir. 2010) (teacher's transfer from permanent classroom teacher in middle school to floating teacher in high school not an adverse employment action, as "such a disparity in working conditions does not constitute a materially adverse change in the terms and conditions of employment" (internal quotation marks omitted)); *Galabya*, 202 F.3d at 641 (summary judgment appropriate where teacher's claims that transfer from teaching keyboarding to special education junior high school students to teaching keyboarding to mainstream high school students "failed to create a genuine issue of material fact on the issue of whether his reassignment to [the high school] was an adverse employment action"); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 265 (E.D.N.Y. 1999) (although teacher had "disdain" for new position in pre-kindergarten class, her transfer from first grade class was not an adverse employment action because there was "no material evidence that her transfer obliged her to perform tasks that were less appropriate for her skills than her prior position or adverse to her in any other legally cognizable way" (citing *Cooper v. New York State Dep't of Human Rights*, 986 F. Supp. 825, 828 (S.D.N.Y. 1997))); *accord Nash v. Palm Beach Cnty. Sch.Dist.*, 469 F. App'x 712, 714 (11th Cir. 2012) ("Because [plaintiff] failed to demonstrate his transfer resulted in any tangible harm, he failed to establish a *prima facie* case of employment discrimination."); *Weidinger v. Flooring Servs. Inc.*, No. 98-10989, 1999 WL 236038, at *4 (5th Cir. Apr. 2, 1999) (summary order) ("[Plaintiff's] complaint that she was given little work, and eventually was transferred to a different office, relieved of her duties as [defendant's] personal secretary while given certain new responsibilities, and required to report directly to [another individual] instead of [defendant] does not describe an adverse employment action."); *Sanchez v. Denver Publ. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) ("We do not find any special circumstances unique to this case that show this employment action was anything beyond a mere inconvenience or alteration of job responsibilities. Because [plaintiff] experienced a purely lateral transfer, we agree with the district court that despite her personal discomfort she failed to establish a prima facie case of discrimination."); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) ("The evidence fails to establish that [plaintiff] was adversely treated in being reassigned. She was reassigned but suffered no diminution in her title, salary, or benefits. The substance of [plaintiff's] complaint is that the job to which she was reassigned involved fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area. This describes nothing more disruptive than a mere inconvenience or an alteration of job responsibilities." (citation and quotations omitted)).

### 3. No Evidence of Circumstances Giving Rise to an Inference of Discrimination

Plaintiff argues that an inference of discrimination arises because (1) Geras targeted her in his investigation of the "Slap Your Co-Worker Day" email while not disciplining any of the employees, including

at least one male, and (2) Elmont and Harper did not subject Geras to comparable discipline even though they determined his conduct to be "unacceptable."

As the Second Circuit has stated,

> [t]o establish the fourth element of a prima facie case, [plaintiff] must show that she was treated differently from "similarly situated" males. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). To be "similarly situated," the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects. *Mitchell*, 964 F.2d at 583.

*Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). The Second Circuit further explained the standard for the fourth element in *Graham v. Long Island Rail Road*, stating,

> We have said since that to satisfy *Shumway*'s "all material respects" standard for being similarly situated, a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards. *See Norville* [*v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 2d Cir. 1999]. In addition, the standard we used in *Shumway* requires plaintiff to show that similarly situated employees who went undisciplined engaged in comparable conduct.

230 F.3d 34, 40 (2d Cir. 1999).

An inference of gender discrimination is undermined where plaintiff identifies both women and men who receive preferential treatment. *Aiello v. Stamford Hosp.*, No. 3:09cv1161(VLB), 2011 WL 3439459, at *16 (D. Conn. Aug. 8, 2011) ("First, an inference of gender discrimination is undermined by the fact that [plaintiff] identifies both female and males who received preferential treatment."); *see also Hinton v. City Coll. of N.Y.*, No. 05 Civ. 8951(GEL), 2008 WL 591802, at *13 (S.D.N.Y. Feb. 29, 2008) ("To the extent that [plaintiff] attempts to raise an inference of discrimination by comparing her treatment with that of others allegedly similarly situated, such an inference plainly fails to the extent the others who supposedly received better treatment were not men, but other women."); *Montgomery v. Chertoff*, No. 03-CV-5387(ENV)(JMA), 2007 WL 1233551, at *13 (E.D.N.Y. April 25, 2007) (no inference of gender discrimination where, *inter alia*, "[m]embers of the clique that received preferential treatment included women").

With respect to plaintiff's first argument, that an inference of gender discrimination arises because Geras targeted her while not disciplining other employees, including at least one male employee, such an argument fails. Plaintiff claims that Geras failed to discipline female employees as well as one male employee. However, it is uncontroverted that, three out of the four employees who supposedly received preferential treatment were also women. Thus, such conduct cannot support an inference of discrimination. *See Hinton*, 2008 WL 591802, at *13.

Plaintiff's second argument also fails. Plaintiff argues that Geras was not subject to comparable discipline even though his conduct was deemed to be "unacceptable." As a threshold matter, there was no evidence in the record of discipline of plaintiff regarding the email. In any event, "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and

comparator's cases, rather than a showing that both cases are identical." *Graham*, 230 F.3d at 40. The conduct at issue with respect to Geras does not closely resemble plaintiff's conduct. Here, Harper found that Geras used an inappropriate tone when dealing with plaintiff with respect to their interactions regarding the "Slap Your Co-Worker Day" email, and disciplined him.[13] Although it is unclear what conduct of her own that plaintiff would compare to Geras' conduct, no rational jury could consider plaintiff's conduct with respect to the "Slap Your Co-Worker Day" email comparable to Geras' conduct in responding to the email.

Because plaintiff has failed to produce evidence giving rise to an inference of discrimination, the Court grants the defendants' motion for summary judgment on plaintiff's gender discrimination claim under Title VII.

### B. Plaintiff's Title VII Retaliation Claim

#### 1. Applicable Law

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36

---

[13] After Harper found that Geras used an inappropriate tone with Filippi, he placed a disciplinary letter in Geras' personnel file. Geras also was terminated from the District in February 2010, though the circumstances surrounding his termination are not fully developed in the record. (Dist. Defs.' Ex. E, Geras Dep. at 10-11.)

L.Ed.2d 668 (1973). First, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999). Informal as well as formal complaints constitute protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions did not. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were

pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). In particular, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id*. at 69.

2. No Evidence of Protected Activity

Plaintiff argues that she engaged in protected activity when she (1) complained about the "Slap Your Co-Worker Day" email, (2) complained to Schwartz regarding Geras, and (3) submitted letters through her attorney to the District. (Pl.'s Opp. at 9-10; Pl's Letter, May 10, 2012, ECF No. 75.) Even viewing all of the evidence in the light most favorable to plaintiff, plaintiff cannot establish that she engaged in protected activity, as contemplated by Title VII, by having a reasonable belief that the conduct at issue violated the discrimination laws.

a. Applicable Law

"The first element of the *prima facie* case requires a showing that plaintiff engaged in 'protected activity' which refers to actions taken to protest or oppose statutorily prohibited discrimination." *Aspilaire v. Wyeth Pharmas., Inc.*, 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009) (citing *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 537-38 (S.D.N.Y. 2008)).

Title VII protects not only those employees who opposed employment practices made unlawful by the statute, but also those who have a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions were not, in fact, unlawful. *McMenemy*, 241 F.3d at 283 (quoting *Manoharan* 842 F.2d at 593).

Mere complaints of "unfair treatment by an individual" are not protected speech under Title VII. *Aspilaire*, 612 F. Supp. 2d at 308. "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Id.* (citing *Dinice-Allen v. Yale-New Haven Hosp.*, No. 3:06CV00675 (PCD), 2008 WL 160206, at *4 (D. Conn. Jan. 10, 2008)). In addition, a plaintiff's employer "must have understood, or been able to understand, that plaintiff's opposition was directed at conduct prohibited by Title VII." *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 264 (S.D.N.Y. 2000); *see also Ramos v. City of New York*, No. 96 CIV. 3787(DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) ("While there are no magic words that must be used when complaining about a supervisor, in order to be protected activity the complainant must put the employer on notice that the complainant believes that discrimination is occurring.").

The Second Circuit has stated that the reasonableness of plaintiff's belief that the underlying employment practice was unlawful "is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)); *see also Abeln v. Ultra Life Batteries*, No. 07-CV-6113L, 2009 WL

857497, at *2 (W.D.N.Y. Mar. 30, 2009). As one court noted, "[b]ecause it is the totality of the circumstances, and not merely the circumstances that give rise to the complaint in question, which determine the reasonableness of the employee's belief, courts exploring the issue of protected activity have consistently concluded that a single, isolated inappropriate comment is generally insufficient to engender a reasonable belief that a Title VII violation has occurred." *Abeln*, 2009 WL 857497, at *2 (citing *Clark Cnty. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001); *Reed*, 95 F.3d 1170, 1179; *Khan v. Hip Centralized Lab Servs., Inc.*, No. CV-03-2411, 2008 U.S. Dist. LEXIS 76721 at *6 (E.D.N.Y. Sept. 17, 2008) (explanatory parentheticals omitted)); *see also Holmes v. Long Island R.R. Co.*, 96 CV 6196, 2001 U.S. Dist. LEXIS 10431, at *18 (E.D.N.Y. June 4, 2001) (discussing the Supreme Court's conclusion in *Breeden* that "[i]solated, minor instances of offensive utterances could not provide an objectively reasonable basis for believing that a Title VII violation had occurred").

### b. Analysis

The Court concludes that, even construing the evidence most favorably to plaintiff, no rational jury could conclude that she had a reasonable belief that the underlying conduct of which she complained violated the discrimination laws, and thus plaintiff cannot establish that she engaged in protected activity under Title VII.[14]

---

[14] The Court concludes, in the alternative, that plaintiff cannot demonstrate that she was subject to an adverse employment action for purposes of a retaliation claim for the reasons discussed *supra* with respect to the gender discrimination claim. Although the standard on this issue for a retaliation claim is lower than is necessary to establish an adverse action

With respect to plaintiff's first set of complaints, regarding the "Slap Your Co-Worker Day" email, no rational jury could find that plaintiff had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy*, 241 F.3d at 283 (quoting *Manoharan*, 842 F.2d at 593). The email was sent to plaintiff by a female co-worker who stated "Check out the original senders! Top of your list?" (Dist. Defs.' 56.1 ¶ 61.) According to plaintiff, "some people could take [the video] as a joke" and she did not interpret the email to mean that any of her co-workers wanted to slap her. (*Id.* ¶¶ 60, 62.) Plaintiff did not believe that the email had anything to do with her. (*Id.* ¶ 63.)

---

for a discrimination claim, no rational jury could find that the transfer would dissuade a reasonable worker from making or supporting a charge of discrimination, given the uncontroverted facts discussed *supra* regarding the transfer. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (explaining, in a retaliation case, "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action" (citations and internal quotations omitted)); *see also Stephens v. Erickson*, 569 F.3d 779, 792 (7th Cir. 2009) ("[Plaintiff's] new duties are well within his job description, differ minimally from his old duties, and do not prevent him from using his 'skill and expertise' to such an extent that the reassignment is materially adverse."); *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 996-97 (6th Cir. 2009) ("In other words, [Plaintiff] has not shown that the transfer resulted in the type of 'injury or harm' that the Supreme Court in *Burlington Northern* said was necessary to sustain an action under Title VII. The record, moreover, shows that [plaintiff] himself desired a transfer because he did not get along with [his supervisor]. This is a legitimate and nonretaliatory reason for the transfer that [plaintiff] has not refuted." (citation omitted)). Similarly, the Court also concludes that no rational jury could find where the other female employee with whom plaintiff had a dispute and who did not engage in any alleged protected activity, was also transferred at the same time as plaintiff.

Although there is evidence in the record that plaintiff took "minor offense" to the email (Def. Geras' Ex. A, Filippi Dep. at 135 (plaintiff forwarded the email because she found it offensive); Pl.'s Ex. 5, Morelli Letter at 1 (plaintiff took "took minor offense to the email")), there is no evidence upon which a rational jury could find that plaintiff reasonably believed that this incident created a hostile work environment severe enough to be actionable under Title VII.[15]

With respect to plaintiff's complaints regarding Geras' behavior through her conversation with Schwartz and Morelli's letters, no rational jury could find that plaintiff reasonably believed that she was complaining of a hostile work environment or gender discrimination in violation of Title VII. Although plaintiff complained of Geras' preference for Hollwedel, there was no allegation by plaintiff (or even later by her attorney) that such preference was discrimination based on gender. *See, e.g.,*

*Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 520 (S.D.N.Y. 2010). In addition, no rational jury could find that plaintiff reasonably believed that complaints of Geras' anger toward plaintiff, preference for Hollwedel, and general unprofessional behavior constituted an unlawful hostile work environment based upon gender. *See id.* at 520-21 (no reasonable belief of unlawful discrimination where plaintiff lodged complaints that supervisor's behavior could have a detrimental effect on the department, violated his duty of loyalty, represented a conflict of interest, created an unprofessional environment and violated the company's ethics policy). Any claim by plaintiff that she possessed a reasonable belief that she was complaining of unlawful conduct is belied by plaintiff's own admission that she did not complain to Schwartz about sexual harassment.[16]

In short, plaintiff complained that Geras lacked civility towards her; however, general claims of uncivilized behavior,

---

[15] Under Title VII, a hostile work environment is established by a plaintiff showing that his or her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)); *accord Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 451 (S.D.N.Y. 2011). The conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quotation marks omitted). In addition, a plaintiff seeking to establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quotation marks omitted).

[16] In addition, in plaintiff's deposition, the following exchange took place:

Q. Okay, are you claiming that Mr. Geras or Mr. Harper did anything of a sexual nature towards you?

A. No.

Q. You're not claiming they physically touched you?

A. No.

Q. You're not claiming they made any sexual innuendos to you?

A. No.

Q. You're not claiming they said or did anything that was sexually inappropriate to you, are you?

A. No.

Q. That's not part of this lawsuit at all?

A. No.

(Def. Geras' Ex. A, Filippi Dep at 201-02.)

unrelated to a person's status in a protected class, are not cognizable under Title VII. *See, e.g.*, *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Title VII does not establish a 'general civility code' for the American workplace." (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75 (1998))); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). Thus, the statements by plaintiff in this case to her employer did not provide a reasonable belief of discrimination, and thus cannot constitute protected activity under Title VII for purposes of a retaliation claim.

Even if the Court assumes, *arguendo*, that plaintiff possessed a reasonable belief that she was complaining of gender discrimination in violation of Title VII, no rational jury could find that defendants understood plaintiff's complaints as such. As an initial matter, while plaintiff made complaints of "harassment" and "discriminatory treatment" nothing in the record indicates that she complained of harassment or discrimination based on plaintiff's gender proscribed by Title VII. In plaintiff's deposition, she acknowledged that she did not report sexual harassment to Schwartz. (Def. Geras' Ex. A, Filippi Dep. at 199.) Through Morelli's letters, plaintiff complained of, *inter alia*, Geras' favoritism of Hollwedell, Hollwedell's actions toward plaintiff, Geras' anger toward plaintiff, and alleged acts of retaliation for alleged prior complaints. Morelli's letters track the complaints made to Schwartz, which plaintiff acknowledges were not complaints of sexual harassment.

The Court notes that plaintiff used the words "hostile work environment" and "discriminatory treatment" in her complaints. As one court within this Circuit has noted, however, "the mere fact that plaintiff used the term 'hostile environment' in her email to her supervisor is not enough; the court must look at the substance of her complaint, not the terminology that she used." *Foster v. Humane Soc. of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (citing *Sullivan v. Cappius*, 711 F. Supp. 2d 279 287 (W.D.N.Y. 2010) ("The mere insertion by plaintiff's attorney of the legal term of art 'hostile environment' in this claim does not render this a viable cause of action[under the HRL], where the facts alleged here show no more than that plaintiff complained about matters falling completely outside the scope of the HRL")); *Fields v. Lock Lord Bissel & Liddell LLP*, No. 1:07-CV-2984, 2009 WL 2341981, at *16 (N.D. Ga. July 28, 2009) ("it is not enough for Plaintiff to allege merely that she used the word 'retaliation' and that, by using a particular Title VII 'buzzword,' her conversations with [her supervisor] automatically became protected activities under Title VII"); *cf. Brummell v. Webster Cent. Sch. Dist.*, No. 06-CV-6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009) ("While it is true that a plaintiff need not explicitly allege a violation of Title VII for his or her conduct in making a complaint about working conditions to be considered protected activity, (*See* [*Kelly v. Sun Microsystems, Inc.*, 520 F. Supp. 2d 388, 403 (D. Conn. 2007)] (employee not required to use "legal terms or buzzwords" when complaining of discrimination)) the plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected

by Title VII."). Having reviewed all of plaintiff's complaints, the Court concludes that no rational jury could find that plaintiff complained of discrimination based on her gender, or that the defendants could understand the complaints as such.[17]

Other courts have granted summary judgment under analogous circumstances where the underlying complaint could not reasonably be believed (under an objective standard) as sufficiently severe to trigger a hostile work environment or disparate treatment claim based upon gender. *See, e.g.*, *Krasner*, 680 F. Supp. 2d at 521 ("But even giving [plaintiff] the benefit of the doubt, and assuming, arguendo, that he genuinely possessed a reasonable belief that he was complaining of unlawful gender discrimination, the retaliation claim flounders on the fact that [defendant] had no way to understand [plaintiff's] complaints as such."); *Abeln*, 2009 WL 857497 at *3 ("It is undisputed that [plaintiff's co-worker's] comment, while inappropriate and unprofessional, was not specifically directed toward plaintiff, and plaintiff does not allege that [plaintiff] was humiliated, embarrassed or offended to the extent that the terms and conditions of [plaintiff's] employment were altered. Plaintiff has not alleged, nor does the record reveal, any other further comments by [plaintiff's co-worker] or anyone else at [plaintiff's employer] that is

of a sexual nature, or that could otherwise be characterized as sufficiently serious, triggering Title VII."); *Holmes*, 2001 U.S. Dist. LEXIS 10431, at *19 (where plaintiff's physical therapist co-worker made comments regarding her body and expressed a desire to see her in a bathing suit during physical therapy, "given the isolated nature of the incidents complained of here, plaintiff could not have had an objectively reasonable belief that Title VII had been violated").[18]

C. New York State Claims

Plaintiff's complaint also asserts causes of action under New York State law. Having determined that the federal claims do not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s]' to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed

---

[17] The Court notes that Morelli's letters contain references to the District's code of ethics, which proscribes sexual harassment, and an employee whose complaint of sexual harassment was ignored by Geras. With respect to the other employee's complaint of sexual harassment, the conduct was not ongoing, and plaintiff does not allege or argue that she was retaliated against for complaining of sexual harassment with respect to another employee. The oblique reference to the code of ethics relates to proper behavior in the workplace and does not suggest that Geras was subjecting plaintiff to sexual harassment or a hostile work environment based on her gender.

[18] Plaintiff argues that *Holmes* is distinguishable from the instant case because the conduct in *Holmes* was attributable to a co-worker, whereas in the instant case, the conduct was attributable to Geras and Harper. (Pl.'s Letter at 3, May 10, 2012, ECF No. 75.) With respect to the "Slap Your Co-Worker Day" email, there is no evidence to suggest that defendants Geras and Harper circulated the email or encouraged the circulation of the email in any way.

all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment and dismisses such state claims without prejudice.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant School District's motion for summary judgment in its entirety with respect to the federal claims. The Court declines to exercise supplemental jurisdiction over the state law claims, and dismisses the state law claims without prejudice. Thus, the Court does not address the defendants' motions for summary judgment on the state law claims. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 27, 2012
         Central Islip, NY

* * *

Plaintiff is represented by Aneeba Rehman and Sumantra T. Sinha, Valli, Kane & Vagnini, 600 Old Country Road, Suite 519, Garden City, NY 11530. The attorneys for defendants Elmont Union Free School District and Al Harper are Steven C. Stern and Leo Dorfman, Sokoloff Stern LLP, 355 Post Avenue, Suite 201, Westbury, NY 11590. The attorneys for defendant Robert Geras are Beth Gereg, Gary Edward Dvoskin, Keith V. Tola, and Rondien Erin Novitz, Cruser Mitchell & Novitz, LLP, 175 Pinelawn Road Suite 301, Melville, NY 11747.